
# ARKANSAS COURT OF APPEALS

### DIVISION III
### No. CV-13-49

| | |
|---|---|
| LYNDA HAMM<br><br>APPELLANT<br><br>V.<br><br>JERRY HAMM<br>APPELLEE | **Opinion Delivered** September 18, 2013<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. PR 2006-182-3]<br><br>HONORABLE CRAIG HANNAH JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

After Tommy Hamm died in 2006, his will was probated. It named, among others, his brother Jerry Hamm, and one of his sisters, Lynda Hamm, as beneficiaries. Lynda, as executrix of the estate and a potential residuary beneficiary, filed a petition to disinherit her brother Jerry Hamm. The White County Circuit Court denied the petition in a written order. The court entered two additional orders that distributed real property to Jerry. Lynda appeals these three orders.

### I. *The Challenged Orders*

Tommy Hamm died in April 2006; the court probated his will in October of the same year. Among other things, his will devised Tommy's house to his sister Lynda; five acres, a metal shop building, and grain bins were left to Tommy's brother Jerry.

The real legal tussle began when, in early March 2012, Lynda filed a petition to disinherit Jerry. By March 2012, Lynda had served as the estate's personal representative for approximately six years. The petition alleged that Jerry had violated the will's terms by failing to file a waiver of inventory and accounting, proffering another will for probate, and filing a claim against Tommy's estate. Lynda's petition asked that Tommy's interests pass to her as the estate's residuary beneficiary.

Three days after Lynda filed her petition to disinherit him, Jerry filed his waiver of inventory and accounting and a petition seeking a partial distribution of his deceased brother's real and personal property. The petition asserted that six years had passed since Tommy's death and that the property was not necessary to administer the estate.

On 15 August 2012, one day before a hearing was set to occur, Lynda moved to continue. Having apparently been admitted to a Memphis, Tennessee hospital on August 14, she told the court that she could not attend the hearing but wanted to do so. Jerry responded that Lynda's testimony was unnecessary and that the legal issues concerning whether he should be disinherited had been briefed. Perhaps the most important reason for Jerry's resistance was that Lynda had not made a distribution in the almost six years the estate had been opened. On the day of the hearing, the circuit court denied from the bench Lynda's continuance request and her petition to disinherit Jerry.

About one month later, the court entered three separate written orders on a number of substantive issues. In its September 20 order denying Lynda's petition to disinherit, the circuit court found that Jerry had timely filed a waiver of inventory and accounting and that no prejudice had resulted in any event. Despite its expressed

reservation about whether filing a claim against the estate could trigger the will's *in terrorem* clause, the court found that Jerry had withdrawn an earlier claim he made against the estate. The court also found that Tommy had left at least two instruments purporting to be his will—and that Jerry had proffered a will that Tommy had executed in 2000 without actually knowing about Tommy's subsequent 2005 will, the latter being the one that was probated. The court ruled that Jerry's proffer of a 2000 will was not a contest of the 2005 will. Consequently, the proffer did not trigger the probated will's *in terrorem* clause.

In its order titled "Initial Order Directing Partial Distribution . . . to Jerry Hamm," the court found that Lynda had failed to make any significant distributions for approximately six years. The court then made a partial distribution to Jerry of the metal shop building and five acres. The order contained a metes-and-bounds description of the distributed property.

The court entered a third order ("Final Order Directing Partial Distribution To Jerry Hamm") that repeated the court's prior rulings on the petition to disinherit Jerry and Lynda's failure to make distributions for six years.

Lynda appealed these three orders and argues five points to this court:

- The court erred by not ruling that a requirement in a will that heirs must file waivers of inventory and accounting to inherit was valid.

- The court erred in not finding that Jerry's allegedly tardy waiver violated the will's terms.

- The court mistakenly found that Jerry had not secreted assets.

- The court erred in allowing an invalid survey (in Lynda's opinion) to determine the shape of the five acres left to Jerry.

- The court should not have deprived Lynda the opportunity to personally appear at the August 2012 hearing given her hospitalization.

II. *Analysis*

Probate orders, with two exceptions that don't apply here, are appealable before an estate has been closed. Ark. Code Ann. § 28–1–116 (Repl. 2012); *Sanford v. Murdoch*, 374 Ark. 12, 285 S.W.3d 620 (2008). We review probate proceedings de novo on the record but will not reverse a circuit court's factual determinations unless they are clearly erroneous. *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007). We do not, however, defer on pure issues of law. *Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991).

We begin with Lynda's points on appeal that relate to the circuit court's decision to reject her attempt to disinherit Jerry Hamm.

A. Waivers and The Will's *In Terrorem* Provisions

An *in terrorem* clause in a will is one that voids a gift to a devisee or legatee, if the legatee or devisee disputes provisions of the will or the gift. *See* Restatement (Third) of Property § 8.5 cmt. a (2003); *Lytle v. Zebold*, 235 Ark. 17, 357 S.W.2d 20 (1962). Our supreme court has recognized the validity of these clauses. *E.g.*, *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007).

Tommy's will has the following provisions that the parties have consistently called the *in terrorem* provisions:

If any one of the beneficiaries in this Will, or any person acting for a person named herein, shall commence any proceedings or make any attempt to cancel change or contest any provision in this Will in any manner, or refuse to execute a waiver of inventory and accounting, I hereby revoke any gift, legacy, bequest or devise to such beneficiary, and direct that such beneficiary's share of any gift, legacy, bequest or devise be distributed as if such beneficiary had predeceased me leaving no lawful descendants.

I direct if any court shall invalidate the above referenced disinheritance provision, said Judge should be removed from any determination regarding the interpretation of this Will and its validity and from the probate of my Estate.

Jerry filed his waiver three days after Lynda filed her petition to disinherit, and over five years after the will was admitted to probate. Lynda argues that the *in terrorem* clause was triggered because Jerry did not file his waiver of accounting and inventory until long after she had filed her inventory and accountings. Relying on Ark. Code Ann. sections 28-49-110(a)(1) and 28-49-103(a)(4), she says that because a personal representative must file an inventory within two months after being appointed, that Jerry also had two months from the personal representative's appointment to file any waiver. Lynda also cites several nineteenth-century cases to support her contention that a testator has an unfettered right to dispose of his or her property in any manner that he or she wishes. Lynda overreaches.

We start where Lynda did not, with the plain words of the will's *in terrorem* clause. They do not impose any express time limitation on when a beneficiary must file a waiver. In construing a will or testamentary document, we carry out the testator's intention, as it is expressed by the instrument's words. *Spencer v. Floyd*, 30 Ark. App. 230, 785 S.W.2d 60 (1990). The circuit court denied the petition to disinherit Jerry because it found that his waiver was in fact filed and no prejudice resulted from any delay in the filing. This leads us to another fundamental canon of how courts should read a will's terms: where possible,

we should strictly construe no-contest clauses because applying them results in a forfeiture. Restatement (Third) of Property § 8.5 cmt. d. Finally, we have reviewed the statutes that Lynda relies on, but they do not require us to reverse based on the record, the arguments made, and the circuit court's rulings.

The circuit court did not err in ruling that Jerry's waiver was timely in this case for the purpose of deciding whether the will's *in terrorem* provision was triggered against him.

### B. Secreting Assets

Lynda argues from Ark. Code Ann. sections 28-40-106, 28-49-101, and 28-49-105, that Jerry should be disinherited because he absconded with certain estate assets that Tommy devised to her. First, the evidence to support this allegation is, at best, microscopic. In a colloquy between the circuit court and Lynda's counsel, there is a statement by counsel that "some estate assets []are missing or [have] been misappropriated." But this is not evidence that Jerry actually stole estate assets; counsel's statement, standing alone, is not evidence. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). More is required.

Second, Lynda states in her reply brief that Jerry admitted under oath in a deposition that he took Tommy's billfold, which allegedly contained $250, the night Tommy died. But the deposition transcript has not been abstracted. What is worse for Lynda's argument here is that the referenced deposition is not in the record on appeal. Lynda has the burden of bringing up a record sufficient to demonstrate that the circuit court erred on this point, and she has not done so. *Troutt v. Matchett*, 305 Ark. 474, 808 S.W.2d 777 (1991).

SLIP OPINION

C.  The L-Shaped Five Acres

Lynda also argues that the circuit court's first order of partial distribution to Jerry mistakenly ordered that Jerry take an L-shaped plot of land.  Some background on this issue is helpful.  At the August 16 hearing, the court and counsel discussed the issue of the tract being L-shaped.  The initial order of partial distribution gave Jerry the five-acre tract on which the metal shop building sits.  As we pointed out earlier, the order has a metes-and-bounds description of the property taken from a survey that was not made a part of the record.  But from the order's legal description it does appear that the tract is L-shaped.

Lynda says that the metal shop building lies on the same tract of land that was devised to her and which also contained Tommy's (the decedent) home.  The will gives Lynda the house and surrounding land, but no one proved how many acres Tommy owned in the tract on which the house and shop rest.  More to the point, Lynda did not prove that the five acres on which the shop was located could be carved from the larger tract in some geometric configuration that would keep the shop at some acceptable distance from Tommy's former home.

If Lynda's argument here is that the court's written order conflicts with its statements at the hearing, then her argument stumbles on a group of cases, beginning with *Standridge v. Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989), where our supreme court held that a judicial order is not effective under Ark. R. Civ. P. 58 and Ark. Sup. Ct. Administrative Order No. 2 until it is filed with the clerk of court.  There was nothing to prevent the circuit court from adopting its initial distribution order though the property remained L-shaped.  We acknowledge that, in an August 24 letter to the circuit court,

Lynda objected to a proposed order Jerry submitted. But she did not specifically complain that the order distributed the shop tract in an odd L-shaped form. Nor did she, for example, request another hearing so that the surveyor could testify about the survey and whether the tract could have been divided in a more desirable manner.

The circuit court's handling of the five acres is affirmed.

### D.  No Continuance

Finally, Lynda argues that her hospitalization was a sufficient reason for the court to continue the August 16 hearing on Jerry's petition for partial distribution and Lynda's petition to disinherit Jerry and that the court abused its discretion in going forward that day. The grant or denial of a motion for continuance is within the sound discretion of the circuit court, and we will not disturb a decision unless it is tantamount to a denial of justice. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001).

Though Lynda had filed a trial brief arguing the issues taken up during the August 16 hearing, she says she was denied due process because she couldn't make certain arguments at the hearing. A party to a civil action ordinarily has a "right" to attend a trial—and we assume here for simplicity's sake that a trial and a hearing on a briefed probate issue are coterminous—the continuance request based on alleged ill health must ordinarily show that the party had some particular reason to appear, whether as a material witness or otherwise. *McMorella v. Greer*, 211 Ark. 417, 200 S.W.2d 974 (1947). It is true that Lynda submitted to the court a letter from her doctor stating that she was being treated for "cardiovascular related issues." But she did not proffer a statement explaining why she herself had to be present and what she would have contributed to the hearing. A

circuit court does not abuse its discretion by denying a motion for a continuance based on the absence of witnesses when no proffer is made of what the witnesses would testify to. *Roe v. Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992).

Given the delay in the probate case's proceedings, that the substantive issues addressed at the August 16 hearing had been briefed before the hearing began, that Lynda's counsel appeared on her behalf, and that Lynda made no proffer showing why a denial of justice might ensue in her physical absence, we affirm the court's decision to hold the hearing when it did.

### III.  *Conclusion*

We affirm the circuit court's three orders in all respects.

Affirmed.

GLADWIN, C.J., and WALMSLEY, J., agree.

*Ralph M. Clifton*; and
*Daggett, Donovan and Perry, PLLC*, by:  *Robert J. Donovan, P.A.*, for appellant.

*Buck C. Gibson, P.A.*, by:  *Buck C. Gibson*, for appellee.