Cite as 2013 Ark. App. 666

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-100

| | |
|---|---|
| CAPI PECK PETERSON<br>APPELLANT | **Opinion Delivered** November 13, 2013 |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>FIFTH DIVISION<br>[NO. 60CV-10-6105] |
| HANNAH PECK a/k/a HANNAH<br>FINLEY, INDIVIDUALLY AND AS<br>TRUSTEE OF THE PECK FAMILY<br>TRUST U/D JUNE 15, 2001 | HONORABLE WENDELL GRIFFEN,<br>JUDGE |
| APPELLEE | AFFIRMED |

## BILL H. WALMSLEY, Judge

This appeal involves a dispute over the ownership of a piece of artwork created by Alexander Calder. Robert Peck was the owner of the artwork before his death in 2006. Appellant Capi Peterson is Robert Peck's daughter. Appellee Hannah Peck is Robert Peck's widow. After a bench trial, the Pulaski County Circuit Court found that the artwork was not the subject of an inter vivos gift to Peterson from Robert Peck and that it was not given to Peterson through Peck's trust. The court also found that Peterson had forfeited her interest as a trust beneficiary by questioning the actions of the trustee, Hannah Peck. Peterson argues three points challenging those rulings. We affirm.

Peterson's grandparents purchased a mobile by Alexander Calder known as "Autumn Leaves" ("the Calder") in the 1950s. Robert Peck had possession of the Calder after the deaths of his parents. Peck created the Peck Family Trust, a revocable trust, on May 8, 2001.

The purpose of the trust was to provide for the support, education, maintenance, and preservation of the health of Hannah Peck during her lifetime. Robert Peck was to be the trustee during his lifetime, with Hannah Peck named as trustee upon his death.

On June 15, 2001, Robert Peck created another Peck Family Trust that appears to be identical to the May 8, 2001 trust. Also on June 15, 2001, Peck executed a Declaration of Trust Ownership conveying "[a]ll tangible articles of a household or personal nature . . . , including . . . works of art" to the trust. The declaration also stated that it was intended to revoke all prior declarations of ownership.

In January 2005, Robert Peck amended and restated the May 2001 trust. He also executed a will that left all artwork and most of his other personal property to Hannah Peck if she should survive him. The rest of Robert Peck's property was to pour over into the trust. The will specifically referenced the May 2001 trust and incorporated it by reference.

Robert Peck passed away in 2006 while living in Hawaii and married to Hannah Peck. Hannah Peck maintained that she received the Calder mobile under her husband's will and sold it for $3.7 million.

On October 25, 2010, Peterson filed suit against Hannah Peck, as trustee, alleging that she was the owner of the Calder mobile and that Hannah Peck wrongfully sold it to a third party and was liable to Peterson for its value. Peterson sought an accounting for the Peck Family Trust and damages for the sale of the mobile.

Hannah Peck answered the complaint and counterclaimed for a declaratory judgment to determine (1) that ownership of the Calder was in the Peck Family Trust, (2) that Peterson

had violated the terms of Paragraph 4.9 of the trust, and (3) for her attorney's fees and costs. She contended that, in June 2001, Robert Peck transferred his tangible personal property to the trust and, upon Robert Peck's death, the trust was to be distributed per memorandum signed by Robert Peck, and if no memorandum, by her as trustee with proceeds distributed as residue of the trust. Hannah Peck acknowledged that she sold the mobile and invested the proceeds in what turned out to be Allen Stanford's offshore Ponzi scheme. She also stated that the trust was a party in a class–action suit against Stanford.

On October 25, 2011, Peterson filed an amended and substituted complaint, again asserting ownership of the Calder mobile, asking for an accounting, and seeking to replenish the trust for damages caused by Hannah Peck's investments with Stanford. She also alleged that Hannah Peck used trust funds to purchase a luxury automobile at no benefit to the trust. The purpose of the amendment was to make Hannah Peck, as an individual, a defendant.

The case proceeded to trial on March 4, 2012. At trial, Peterson asserted that she was the owner of the mobile by virtue of an inter vivos gift from her father. This assertion was based on an April 2001 letter Robert Peck wrote to Peterson, stating that he gave Peterson the Calder artwork, although he retained the right to display it during his lifetime. In the letter, Peck characterized it as "an attachment to, and pursuant to Section 3.3 of the Peck Family Trust created in April of 2001."

In the alternative, Peterson asserted that she received the artwork under the June 2001 trust. In doing so, she relied on another letter from her father, written in July 2004 to attorney Joe Polk in which he reaffirmed that he had given the Calder to Peterson. The letter

also suggested changes to Peck's trust and will.

At the close of the evidence, the parties asked that they be allowed to submit posttrial briefs. On September 13, 2012, the circuit court entered its order dismissing Peterson's complaint. The court found that there was no valid inter vivos gift of the Calder mobile and that it was not given to Peterson through the trust. The court further found that there was no evidentiary support that Hannah Peck acted in bad faith or reckless indifference with regard to her trust duties, and thus Peterson forfeited her interests in the trust through the share-cancellation provision. As a result, Peterson lacked standing to sue as a beneficiary of the trust. This appeal followed.[1]

The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts lies with courts of equity, *In re Ruby G. Owen Trust*, 2012 Ark. App. 381, ___ S.W.3d ___, and courts of equity have inherent and exclusive jurisdiction of all kinds of trusts and trustees. *Id*. Our appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions. *Id*. We have stated repeatedly that we will not reverse a finding by a trial court in an equity case unless it is clearly erroneous. *Id*. We have also stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id*.

---

[1]On November 28, 2012, the court ordered Peterson to pay attorney's fees of $38,515 to the trust. Peterson does not develop an argument challenging the fee award.

Peterson's first two points are argued in the alternative. In those points, she contends that she is the owner of the artwork as a result of an inter vivos gift from her father or, that she received the artwork under the June 15, 2001 trust.

Under Arkansas law, a valid inter vivos gift is effective when the following elements are proved by clear and convincing evidence: (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000). The rule with respect to delivery of gifts is less strictly applied to transactions between family members. *Chalmers v. Chalmers*, 327 Ark. 141, 937 S.W.2d 171 (1997). Even so, delivery must occur for a gift to be effective. *Id*. Our supreme court further explained in *Chalmers* that the gravamen of delivery is a showing of an act or acts on the part of the putative donor displaying an intention or purpose to part with dominion over the object of the gift and to confer it on some other person. *Id*. Express words or particular conduct are not required when reasonable minds would conclude from attending circumstances that the purpose was present. *Id*.; *Carlson v. Carlson*, 224 Ark. 284, 273 S.W.2d 542 (1954). An inter vivos gift may be delivered in a constructive manner. *See Carlson*, *supra*; *Gross v. Hoback*, 187 Ark. 20, 58 S.W.2d 202 (1933).

The circuit court found that the facts fell short of satisfying two of the inter vivos gift elements, specifically, that Peck lacked the intent to make an immediate, present, and final gift, and that by retaining the right to display the Calder mobile, Peck did not



unconditionally release all future dominion and control over the property.

Citing *Bellis v. Bellis*, 75 Ark. App. 213, 56 S.W.3d 396 (2001), and *Gruen v. Gruen*, 496 N.E.2d 869 (N.Y. 1986), Peterson argues that one may make a present inter vivos gift of personal property while retaining a life estate in the property. Neither *Bellis* nor *Gruen* helps Peterson.

In *Bellis*, a father gave a music box to his son. The son decided that, for safekeeping purposes and his mother's enjoyment, the music box would be best left temporarily with his parents. The circuit court distinguished the present case from *Bellis* by noting that, in *Bellis*, it was the *donee* who decided to leave the music box with his parents, while here, the *donor* decided he would retain possession of the Calder for display purposes. *Gruen* is not persuasive because New York does not require proof of the same inter vivos gift elements as Arkansas law requires.

Peterson testified that she never had possession of the Calder itself, just the April 2001 letter purporting to give her the artwork. She acknowledged that her father had possession of the piece. Peterson also testified about a conversation with her father where her father told her that he wanted her to have the Calder after his death. Peterson's argument focuses on evidence of Robert Peck's intent to give her the Calder; however, that is only one of the elements necessary to establish an inter vivos gift. A gift inter vivos cannot be made to take effect in the future, as such a transaction would only be a promise or an agreement to make a gift. *Howard v. Weathers*, 55 Ark. App. 121, 932 S.W.2d 349 (1996). Peterson's own testimony showed that Robert Peck had not unconditionally released all future dominion

and control over the Calder. She testified in her deposition that Peck could have transferred possession of the Calder to anyone. Based on our standard of review, we cannot say that the circuit court was clearly erroneous in determining that the elements of an inter vivos gift of the Calder had not been established.

In the alternative, Peterson argues that she received the Calder under the June 2001 trust. In making this argument, Peterson relies on a July 2004 letter her father wrote to attorney Joe Polk about changes he wanted to make to his will and trust. The letter provided, in pertinent part:

> After Hannah's death, I want to divide the trust into two equal parts. One part is to be equally divided by my children – Capi Peck Peterson, Ashley O'Dell, Alison Bisno, Tony Peck. The second half is to be divided into equal parts among Hannah's children – Christy Schmidt, Michael Lasiter, and Holly Woprice.
>
> I have not allocated where I want various pieces of furniture and artwork to go with the exception of the Calder Mobile which I have given my daughter Capi in a letter as an attachment to section 3.3 of the Peck Family Trust. In the letter I state that I give her the Calder but retain the right to display it during my lifetime. As to other works of art and furniture, I plan to photograph them and write on the back of the photograph the name of the individual who will receive that particular object. What is not photographed, I want all of these objects to receive a number and the seven children will draw for them. Since I have left all of these things to Hannah, I guess this is something that should be stated in her will but am not sure. Should it also be written in my Will or in the Trust? Let me know. I will send you Hannah's Will later on this week as it needs revising and would like for you to handle that for us.

Peterson contends that the provisions of the June 2001 trust permit such a letter to make an effective disposition of personal property. Section 3.3 of the June 2001 trust provides as follows:

> 3.3 <u>Specific Gifts</u>. I reserve the right pursuant to Section 4 of the Act 814 of the Acts of the General Assembly of the State of Arkansas for 1979 Ark. Code Ann. § 27-25-107 (1987) to make disposition of tangible personal property by attaching or

7

associating with this trust subsequent to its execution a written, dated statement and list signed by me or in my handwriting designating the devisees of items of tangible personal property.

Peterson does not argue that the July 14, 2004 letter was attached to the June 15, 2001 trust instrument. Nor does she argue that the April 2001 letter was effective under the provisions of the June 15, 2001 trust because it clearly predated the establishment of any of the trusts. Her argument is that the July 2004 letter postdated and was associated with the June 2001 trust. The circuit court found that the July 2004 letter was not attached to, nor did it reference, the June 15, 2001 Peck Family Trust. Instead, the court found that Peck referenced the April 16, 2001 letter in which he attempted to gift the Calder to Peterson. Due to our holding on Peterson's next point on appeal, it is unnecessary to determine if the July 2004 letter was effective under Section 3.3 of the trust.

Peterson's third and final point is that she did not forfeit her interest in the trust. The circuit court found that Peterson lacked standing to sue as a beneficiary of the trust because of the share-cancellation provisions of the trust.

The June 15, 2001 trust instrument contains the following provision:

4.8. Share Cancellation. Should any of my children, or their issue, institute any action to challenge the provisions of the trusts established by this document, or to attack the validity of such trusts, or to remove HANNAH KAY PECK as Trustee, or question her actions as Trustee, then, and in that event, the share to which such child (or his or her issue) would otherwise be entitled shall be forfeited and added to the shares of the remaining children and grandchildren.

The May 8, 2001 trust instrument as amended and restated in January 2005 contained a similar provision:

4.9. <u>Share Cancellation</u>. Should any of Grantor's children, or their issue, institute any action to challenge the provisions of the trusts established by this document, or to attack the validity of such trusts, or to remove Hannah Kay Peck as Trustee, or question her actions as Trustee, then, and in that event, the share to which such child (or his or her issue) would otherwise be entitled, shall be forfeited and added to the shares of the remaining beneficiaries.

The circuit court found no evidence that Hannah Peck acted in bad faith or with reckless indifference with regard to her trust duties and that, as a result, the share-cancellation provisions remained in effect and Peterson had forfeited her interest in the trust.

Our supreme court has recognized the validity of no-contest clauses since at least 1937. *E.g.*, *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007); *Jackson v. Braden*, 290 Ark. 117, 717 S.W.2d 206 (1986); *Lytle v. Zebold*, 235 Ark. 17, 357 S.W.2d 20 (1962); *Ellsworth v. Ark. Nat'l Bank*, 194 Ark. 1032, 109 S.W.2d 1258 (1937). However, because such clauses work a forfeiture, they are strictly construed. Restatement (Third) of Property (Wills & Don. Trans.) § 8.5 *cmt.* d (2003); *Hamm v. Hamm*, 2013 Ark. App. 501, ___ S.W.3d ___.

Courts in other jurisdictions have determined that no-contest clauses are not triggered by proceedings brought by beneficiaries to assert claims outside of a will or trust, i.e., based on a source of right independent of the will or trust. *Jacobs-Zorne v. Superior Court*, 54 Cal. Rptr. 2d 385 (Cal. Ct. App. 1996); *Wright v. Cummins*, 196 P. 246 (Kan. 1921); *In re Estate of Friedman*, 549 N.Y.S.2d 353 (Surr. Ct. 1989); *Haley v. Pickelsimer*, 134 S.E.2d 697 (N.C. 1964); *Doelle v. Bradley*, 784 P.2d 1176 (Utah 1989); *Boettcher v. Busse*, 277 P.2d 368 (Wash. 1954). Peterson's claim of ownership of the Calder by inter vivos gift is independent of the trust and would not trigger the share-cancellation provisions. There are, however, other allegations in her complaint that do trigger the share-cancellation provisions of the trusts.

Peterson argues that her actions in filing her complaint did not attack the validity of the trust. Citing *Jackson*, *supra*, she further contends that questioning the actions of the trustee is not a violation of the no-contest clause. While *Jackson* did hold that questioning the acts of the executor in selling assets was not an attack on the validity of the will that would trigger the no-contest clause, the specific provision at issue only prohibited attacks upon the will. Peterson's argument ignores the specific language of the share-cancellation provisions set out above. Those provisions *are* triggered if the grantor's children, including Peterson, question Hannah Peck's actions as trustee. Here, Peterson's amended complaint asserts that Hannah Peck failed to provide proper accountings; that she used trust funds to purchase herself a luxury automobile for $100,000; and that she depleted trust funds by investing in a fraudulent Ponzi scheme. The complaint sought to have Hannah Peck provide accountings and to pay damages to replenish the trust. Clearly, these allegations questioned Hannah Peck's actions as trustee and asked the court to control her actions as trustee, triggering the share-cancellation provision.

Peterson also argues that her complaint was aimed at the June 2001 trust, not the January 2005 trust, and that she should remain a beneficiary of the January 2005 trust. However, both trusts (June 2001 and January 2005) contain share-cancellation provisions that are triggered if anyone questions Hannah Peck's actions as trustee. The circuit court's finding that Peterson forfeited her interest was not clearly erroneous. Because Peterson forfeited her interest in the trust, she cannot take the Calder or its proceeds through the trust.

Affirmed.

10



HIXSON and BROWN, JJ., agree.

*Southern & Jordan*, by: *Byron S. Southern*, for appellant.

*Hatfield & Sayre*, by: *Richard F. Hatfield*, for appellee.