ELLSWORTH *v.* ARKANSAS NATIONAL BANK, TRUSTEE.

4-4817

Opinion delivered November 15, 1937.

*Coleman & Riddick,* for appellant.

*Chas. Jacobson* and *Murphy & Wood,* for appellees.

SMITH, J. The decision of this case turns upon the proper construction of the will of Mrs. Alice Kempner Blumenstiel, who died in March, 1935, and that duty will be performed when we have ascertained the testatrix's intention in making it. The will reads as follows:

"I, Alice K. Blumenstiel of the city of Hot Springs, and state of Arkansas, hereby make, publish and declare this my last will and testament.

"1st. I direct that all my just debts and funeral expenses be paid as soon as it can be conveniently done after my decease.

"2nd. I give and bequeath to my daughter my home in Hot Springs, Arkansas, subject to the right of my husband to occupy said home so long as he shall desire to do so.

"I also give my daughter Ruth all my jewelry, linens.

"3rd. Ruth and Alfred are to share and share alike in the money and securities I may own at the time of my death.

"4th. I give to my grandsons, E. C. Ellsworth and Jim Ellsworth, and my great grandson, Bobby Ellsworth, the sum of $5 each.

"5. I give all my real estate wherever situated to the Arkansas Bank of Hot Springs, Arkansas, as trustee, in trust for the beneficial use of my children, Alfred

and Ruth Blumenstiel, subject to a life estate therein for the use and benefit of my daughter, Leah Ellsworth.

"In event said Alfred or Ruth should die without having issue then I direct that the interest of the child dying without issue shall pass to the survivor, but if either Alfred or Ruth shall die having a child or children that interest shall pass to said child or children of said deceased.

"6. I nominate and appoint the Arkansas National Bank of Hot Springs as trustee, which said trustee is to have the care and control of all my real estate and collect rents and pay the taxes and upkeep of the property as it shall deem necessary and proper, including fire protection, and in the event of loss or damage by fire to use its judgment in repairing or restoring as the case may be, and keeping the property rented, and shall have the same authority with reference to property I may own jointly with others.

"Said trustee shall set aside from the income of said property such sum as in its judgment may be necessary for taxes and insurance and repairs, and should there be any excess of the same year, said excess shall be equally divided between my children, Leah, Alfred and Ruth, or survivors should either of my children die.

"7. I also nominate and appoint said Arkansas National Bank of Hot Springs, Arkansas, to be sole executor of this my last will and testament.

"It is my desire that the trust therein created shall continue for a period of 20 years.

"That should executors deem it wise to sell any or all of my real estate, it shall invest the proceeds in such manner as shall be to the best interest of the trust estate, and at the end of said trust period the same is to be divided equally between Alfred and Ruth subject to a sum paid Leah, a sum of money equal to what a life estate in said property if unsold would amount to, and all subject to the conditions and terms hereinafter set out.

"Should this will ever be contested by Leah, it is my desire that the court should find it was my inten-

tion to leave my real estate to Alfred and Ruth and their children, if any, should either have children and that Leah receive only a sum equal to a life interest in one-third of said property.

"9. Before my bequest is paid I desire that the sum of $300 be set aside from my estate, the interest therefrom to be used each year for the care and upkeep of my lot in the Jewish Cemetery located in Hot Springs, Arkansas.

"Alice Kempner Blumenstiel,
"Sept. 25th, 1933."

The statement of Lord Eldon that "Generally speaking, you must construe instruments by what is found in their four corners," has been frequently followed and approved by this court, and for that reason we copy the will *in extenso*.

In the decree from which this appeal comes the court found that the trust estate created by the will was for the equal benefit of Ruth Blumenstiel and Alfred Blumenstiel, subject to a life estate in one-third of the net income in Leah Ellsworth. The court found that under the sixth clause of the will the net income of. the trust estate should be divided equally among the three children of the testatrix, one-third to each of them; that the provision of clause 7 of the will provided for a sum of money to be paid to Leah Ellsworth equal to a life estate, as made, subject to the conditions and terms of clause 6, and means that if the property should be sold Leah Ellsworth should be paid a sum equal to a life estate in one-third of the property. The court further found that the last sentence of clause 7 is not. a penalty clause, but a construction clause, and means that if Leah Ellsworth should ever, in any proceeding, bring in question the meaning of the will, the testatrix herself construed the will as found in the decree.

Appellant contends that this construction contravenes clause 5, which all parties concede is the section which disposes of the bulk of the estate. In clause 2 the testatrix devises her home "to my daughter," but "subject to the right of my husband to occupy said home so

long as he shall desire to do so.'' This sentence does not indicate to which daughter the devise was made, but the sentence following removes this doubt. It reads: ''I also give my daughter Ruth all my jewelry, linens.'' Clause 3 devises to Ruth and Alfred the money and securities owned by the testatrix at her death. The inventory and appraisement made by the executor shows the value of the jewelry to be $593.50, and that the testatrix had cash on hand on deposit in a bank in the sum of $1,199.91 at her death. There were no securities except stock in a defunct bank, against which there was a stockholder's assessment of $1,000. The debts, if any, are not recited, but the final bequest is one for $300 for the upkeep of the testatrix's lot in the cemetery where she anticipated her burial. It may, therefore, be said, as both parties concede, that it is clause 5 which disposes of what might be called the corpus of the estate, and it was this property which was devised subject to the trust created. The property consisted of Little Rock real estate, including business property on Main Street, nine dwelling-houses and lots, and seven vacant lots in the city of Hot Springs, and 217 acres of land in Garland county.

For the reversal of the decree it is contended that appellant took a life estate in all the real estate conveyed in trust by the will, and that there are no ambiguities or conflicting provisions in other paragraphs to justify any other construction. It is argued that the seventh clause of the will reaffirms the fifth and provides a penalty in case of a contest of the will. It is argued, also, that certain inadmissible testimony was admitted which should not be considered.

We dispose of this last stated contention first, as it involves the attitude to be assumed, or viewpoint which must be taken, in construing the will.

There was testimony—which appears to be undisputed that an estrangement had grown up between Mrs. Blumenstiel and her daughter Leah, and the competency of that testimony does not appear to be disputed, but the husband of the testatrix, the father of appellant, was

permitted to testify that his wife had made a former will in which appellant was practically excluded from participation in the estate, and that at his insistence his wife had destroyed that will and had executed the one here to be construed. It may be conceded that the testimony as to this former will was incompetent, as it had been destroyed, but, even so, it was competent for Mr. Blumenstiel to testify as to the hostility existing between his wife and daughter.

Other testimony was to the effect that Ruth was 31 years of age at the time of her mother's death, and was unmarried, and had no income of her own. Alfred was 37 years old at the time of his mother's death, and he had never married. He had no income of his own. Both Ruth and Alfred were, and for several years prior to their mother's death had been, in poor health. Leah was 43 years old at her mother's death, was married, in good health, had a husband able to support her, and had an income of her own. Leah had two children, and a grandchild and to each of these a devise of $5 was made. The will contains no other direct provision for the benefit of these children and grandchild.

Both parties to this appeal agree that the case of *Eagle* v. *Oldham*, 116 Ark. 565, 174 S. W. 1176, 1199, correctly announced the rule to be applied in construing this testimony. This case is to the effect that while extrinsic evidence may be admitted to interpret a will, it will not be admitted to show what the testator meant, as distinguished from what the words of the will express, but only for the purpose of showing the meaning of the words used. It was there further said: "We must look to the will to determine the testator's intention, but in getting this view we should place ourselves where he stood, and should consider the facts which were before him in deciding what he intended by the language which he employed. If the rule were otherwise, the making of wills would be so difficult that the very purpose of permitting this method of disposition of property would frequently be defeated."

We will, therefore, view the will from the arm chair of the testatrix, as some cases express it, not to determine what she intended to do, but to properly interpret the language which she employed. In this connection, it may be said that the will, as interpreted by appellant's counsel, gives her a most decided preference. Appellees make calculations based upon Dr. Wigglesworth's annuity tables; found in Scribner on Dower, showing that under appellant's contention she would be given 60 9/10ths per cent. of the whole estate, when calculated on earnings at 5 per cent., and an even larger per cent. of the whole if the income from the property was calculated at 6 per cent. This would result in Ruth—indisputably the favorite child—and Alfred, the only son, receiving about one-third of the estate, while appellant would be given twice as much as both of them combined. Does the will, when read from its four corners, require or permit that construction? If appellant took a life estate in all the property conveyed in trust by the will, Ruth's and Alfred's interests are postponed for twenty years, or until the termination of the trust, and if they should die within that time Leah, if she should survive them, or her children, if she should predecease them, would take the entire estate. *Horseley* v. *Hilburn*, 44 Ark. 458. This notwithstanding the fact that Leah's interest in whatever portion of the property she may take was expressly limited to a life estate, and no provision was made for the children and grandchild except to leave them $5 each.

It is clause 5 which creates the trust, and this is done by a devise to the bank "as trustee, in trust for the beneficial use of my children, Alfred and Ruth Blumenstiel, subject to a life estate therein for the use and benefit of my daughter, Leah Ellsworth." The beneficial use for Ruth and Alfred could not be effective, during the life of Leah, if the trust created was for Leah's exclusive benefit during her life.

The testatrix is presumed to have known, and no doubt knew, that if she died intestate her children would share equally; but the one thing certain about this will

is that this was the very thing the testatrix did not want done, and to effectuate that intention she created a trust "for the beneficial use of my children, Alfred and Ruth," in which Leah, however, was permitted to share for the period of her lifetime. There was no other devise to Leah. The concluding sentence of this clause 5 clearly indicates that the fee was devised to Alfred and Ruth, subject, however, to a trust created for the joint benefit of all the children, in which Leah should participate during her life. There is no express grant to Leah. There is simply reserved for her use and benefit, during her life, what she would have taken in fee as an heir if the will had not been made. That this is the correct construction of clause 5 becomes more apparent when it is considered in connection with other provisions of the will, which we are required to do in determining the meaning of the will when considered in its entirety.

By clause 6 the trustee is to have care and control of "all my real estate," and is charged with the duty of collecting rents, and paying taxes, and of keeping the property insured, and is given the discretion to use its judgment "in repairing or restoring" the property in case of fire. After the income had been collected and the expenses above-mentioned paid, the last sentence of clause 6 provides that "should there be any excess of the same year, said excess shall be equally divided between my children, Leah, Alfred and Ruth or survivors should either of my children die." The word "excess," here employed, can mean only the balance of income remaining after expenses are paid. This clause does not contemplate that the children should make contributions to meet deficits; it imports a distribution to them. If this were not true the will would have provided that a deficit should be borne, rather than that the excess should be divided.

It is also argued by appellees—and we think with equal force and reason—that if all the income from the real estate had been given Leah for her life, the trust could not become operative until after her death, and that contention is not made by any one.

The purpose expressed in clause 6 is reaffirmed in clause 7, which confers authority upon the executor, if deemed wise, to sell the lands covered by the trust, and to reinvest the proceeds of sale, but without destroying the trust, which is to be continued for the full twenty-year period. Anticipating that Leah might survive the twenty-year trust period, paragraph 7 provides, without changing the interest given Leah in paragraph 5, that "at the end of said trust period the same is to be divided equally between Alfred and Ruth subject to a sum paid Leah, a sum of money equal to what a life estate in said property if unsold would amount to, and all subject to the conditions and terms hereinabove set out." This clause 7 appears to mean that the testatrix intended Leah to receive the income from only a one-third interest in the real estate for her life, or the then value of the life estate, if the trust property were sold.

There appears to be no paragraph of the will numbered 8, but it is argued that the last subdivision of paragraph 7 reaffirms the intention to give Leah all the rents from the trust estate, and provides a penalty if she should contest the will. The chancellor was not of that opinion; nor are we. If the will gave Leah two-thirds of the value of the estate, why should she contest that disposition? She would have much to lose and nothing to gain by doing so. Appellant argues that this is not a contest of the will, and it is not. It is rather just such a suit as the testatrix probably contemplated when she wrote the provision relating to a contest. It imposes no penalty, and does not undertake to deprive Leah of anything previously devised her. It neither enlarges nor diminishes the interest given her.

The word contest is defined in Webster's New International Dictionary as follows: "4. Law. To make a subject of litigation; to dispute or resist by course of law; to defend, as a suit; to controvert. Syn.—Dispute, controvert, debate, litigate, oppose, argue, contend."

The testatrix probably realized when she had written the will, which was not as clear as it might and

should have been, that she had discriminated—not for, but against—her daughter Leah, by devising her only a life estate, when the shares given her other two children were not thus limited, and that for this reason Leah might seek to have the will otherwise construed. She, therefore, directed the construction to be placed upon what she had previously written, which was "to leave my real estate to·Alfred and Ruth and their children, if any, should either have children, and that Leah receive only a sum equal to a life interest in one-third of said property."

It is argued that this clause of the will should be excluded, because it never became effective, inasmuch as there has been no contest of the will. But we think there has been, and that the instant case is one of the character contemplated by the testatrix, and that we cannot ignore the construction which she directed should be placed upon the will in that event. This conclusion is reinforced by the fact that the will contains no intimation that Leah should have a certain interest if she did not contest or bring litigation involving the construction of the will, or another, or less, or different, interest if she did so. There is no change of intention in the one case as distinguished from the other. There would have been no litigation if there had been no difference in construction, and this is the very contingency against which the testatrix sought to provide. She wanted her own construction of the will adopted, and she stated what that construction was.

The decree accords with these views, and it is, therefore, affirmed.