Cite as 2025 Ark. App. 606

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-601

| | |
|---|---|
| WILEY DUANE DUVALL<br><br>APPELLANT<br><br>V.<br><br>GREG DUVALL<br><br>APPELLEE | Opinion Delivered December 10, 2025<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27PR-22-21]<br><br>HONORABLE STEPHEN L. SHIRRON, JUDGE<br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Wiley Duane Duvall ("Duane")[1] appeals from an order of the Grant County Circuit Court granting Greg Duvall's ("Greg's") request to enforce the no-contest clause in their father's 2021 will. Duane argues that the circuit court erred in finding that his challenges to the existence of the 2021 will amount to a contest of the provisions therein. We affirm.

Duane and Greg's father, Philip D. Duvall ("Philip"), died on January 14, 2022. On January 25, Duane petitioned to probate his father's September 4, 2009 will ("the 2009 will") in the Saline County Circuit Court. This will was signed by Philip, witnessed by two individuals, and notarized. In the 2009 will, Philip named Duane as executor and left his

---

[1]During the pendency of this appeal, Duane passed away. His counsel filed a suggestion of death with this court and a notice of appointment of personal representative, both of which this court noted on August 27, 2025.

estate to Duane and Greg to share equally subject to the deduction of $100,000 from Greg's share for money he had already received. On January 26, the Saline County Circuit Court admitted the will to probate and appointed Duane executor. Duane accepted appointment on January 27, and letters testamentary were filed the following day.

On February 28, Duane petitioned to transfer the case to the Grant County Circuit Court because Philip resided there at the time of his death. *See* Ark. Code Ann. § 28-40-102 (Repl. 2012). The Saline County Circuit Court entered an order on March 3 transferring the case to the Grant County Circuit Court.

On April 8, Greg petitioned to probate a will Philip allegedly executed on or about October 22, 2021 ("the 2021 will"), which revoked all prior wills. Greg's petition alleged:

> 3. Now, Greg Duvall has come to understand that his father revoked the will that was filed in Saline County and now transferred to this Court. This was done when he executed another will on or about October 22, 2021. That subsequent will contained a clause that revoked any prior will or codicil, and this instrument was prepared for Philip D. Duvall by Cathie Sue Leslie, who along with Mary Ann Caldwell witnessed the execution of such will. They signed in the presence of Philip D. Duvall and in the presence of each other in conformity with law.
>
> . . . .
>
> 5. Because Cathy Sue Leslie handled all of Philip Duvall's affairs and was quite familiar with where he kept everything, it can be established that the original executed will that Ms. Leslie prepared for Philip D. Duvall was in his house in a particular location with his other papers when Duane Duvall went through his father's home alone. This most recent will leaves Duane Duvall substantially less than the will dated September 4, 2009,[2] and strangely Duane Duvall did not discover this instrument when he conducted his search. Greg Duvall believes he can establish that this most recent will existed after the death of Philip Duvall.

---

[2]In the 2021 will, Philip left his entire estate to Greg except a log splitter and "fifteen-acres of property," which he left to Duane.

2

6. This will, which most definitely was executed subsequently to that of September 4, 2009[,] [s]hould be admitted to probate, and Cathy Sue Leslie should be appointed as the personal representative. She had the power of attorney of Philip D. Duvall and rescued his property from going to a tax sale on one occasion. After that Philip Duvall trusted her completely, and so should the court and require no bond.

7. The Petitioner, Greg Duvall, believes that this most recent will of his father should dispose of his estate, but in the alternative, he contends that this will's execution revoked the will of September 4, 2009, and thus the estate should be disposed of pursuant to the laws of intestate succession.

Greg attached a copy of the 2021 will to his petition. The 2021 will was not dated or signed by Philip or by any witness. The 2021 will contained a no-contest clause that provided:

If any beneficiary under this Will contests in any court any of the provisions of this Will, then each and all such persons shall not be entitled to any devises, legacies, bequests, or benefits under this Will or any codicil hereto, and such interest or share in my estate shall be disposed of as if that contesting beneficiary had not survived me.

On April 18, Duane filed a response that denied the allegations in Greg's petition to probate the 2021 will and affirmatively stated that the 2021 will did not conform to the requirements of Arkansas Code Annotated section 28-25-103 (Repl. 2012). Duane asked the court to dismiss Greg's petition. Greg amended his petition on October 26, asserting that the 2021 will was "lost":

4. The allegations contained in paragraph five of the original petition of Greg Duvall are amended. Cathy Sue Leslie handled virtually all of Philip Duvall's financial affairs. This Will which is attached hereto in unsigned form had been executed by Philip D. Duvall in full compliance with the law and kept in a particular location in the home of Philip D. Duvall. It was there that Greg Duvall found it after his father's death and took it to show it to his mother, the former wife of Philip D. Duvall. The mother of Greg Duvall had spoken to Philip D. Duvall prior to his death, and in that conversation, he told his former spouse, mother of his

3

two sons, that he had executed a new Will. He told her of its various bequests. When this lady saw the executed will following Philip's death, she recognized his signature and that it was recent. It also contained the same terms she remembered discussing with Philip D. Duvall. Now the mother, of both these sons, can say that the attachment to the pleading is the same thing that Greg Duvall showed her in attested form following the death of his father, Philip D. Duvall. That executed Will was taken by Greg Duvall to his house and from there it was stolen, which explains why it cannot now be brought before this court.

On November 2, Duane responded to the amended petition, asserting that the 2021 will does not conform to Arkansas Code Annotated section 28-25-103; the will is neither signed nor witnessed; no executed will has been produced; and Greg's statements about what his mother told him that Philip said are inadmissible hearsay. On February 7, 2023, Duane amended his response detailing how the 2021 will did not comport with the law and stating that the 2009 will was "validly" executed and admitted to probate, and no subsequent "validly executed instrument . . . revokes it." Duane asked that the 2009 will be administered as Philip's last will and testament.

After a hearing on April 18, the circuit court, on April 24, entered an order ("2023 order") finding that the 2021 will was a "lost" will and granting Greg's petition to admit the 2021 will to probate. The 2023 order set aside the 2009 will that had been admitted to probate because "it was revoked by the lost will from the fall of 2020." Duane did not appeal the 2023 order admitting the lost 2021 will to probate.

Almost a year later, on February 5, 2024, Greg moved for declaratory judgment seeking to enforce the no-contest clause in the 2021 will. Greg argued that Duane violated the no-contest clause by challenging its admission to probate and that Duane should receive

nothing under the will. Duane responded on February 23 denying the allegations. On May 6, Duane moved to set aside the 2023 order admitting the 2021 will to probate.

On May 6, the court heard Greg's motion for declaratory judgment. When Duane's counsel stated that he had moved to set aside the 2023 order admitting the 2021 will to probate, the circuit court stated, "I have already had an extensive hearing on that, made a ruling on that issue, and admitted the [2021] will" to probate. Duane's counsel stated that he understood, noting that he did not represent Duane in April 2023. Returning to the motion for declaratory judgment and the issue of the enforceability of the 2021 will's no-contest clause, the circuit court expressed concern about whether Duane could be considered to have challenged the 2021 will if he was not sure of its existence. Duane's counsel contended that Duane had not contested any provisions of the 2021 will but challenged only whether the 2021 will had been executed. Greg's counsel asserted that Duane's actions in challenging whether the 2021 will had been executed constituted a will contest. The court allowed the parties to submit trial briefs.

In his trial brief, Greg cited *Sharp v. Sharp*, 2014 Ark. App. 645, 447 S.W.3d 622, which involved the enforceability of an almost identical no-contest clause following a challenge to a will on the basis of testamentary capacity, confidential relationship, and undue influence. Greg asserted that the contestant in *Sharp*—like Duane—did not know if the will in that case was valid before taking a calculated risk to challenge the will that contained a no-contest clause, and this court upheld the enforceability of the no-contest clause. Greg further argued that the no-contest clause should be enforced against Duane because he challenged

5

the 2021 will—by moving to set it aside—more than a year after the circuit court found that it was the operative will.

In his trial brief, Duane contended that his assertion that the "unsigned, unwitnessed and undated" 2021 will does not meet the statutory requirements for a will is not a challenge to a *provision* of the will. Duane distinguished *Sharp* as a challenge to a will on the basis of a confidential relationship and undue influence, not a lost will. Duane stated that none of his pleadings objected to the provisions of the 2021 will and that an objection that the will conform to the law "is not a request for the Court to reject a specific provision but rather to require the Court, as the law does, to require the proponent of the will to meet the necessary evidence to accept the will as that of the decedent."

On June 4, the circuit court entered an order granting Greg's motion for declaratory judgment to enforce the no-contest clause. The court found:

1. Greg Duvall petitioned the Court to admit his father's purported lost will to probate on April 8, 2022, and attached a copy as an exhibit. Duane Duvall filed a Response on May 25, 2022, denying that the will should be admitted, and specifically stating that it did not comply with A.C.A 28-25-103. Duane Duvall's response was a clear challenge not only to the existence of the Will, but also the validity of the will.

2. On October 26, 2022, Greg Duvall filed an Amended Petition, amending various factual allegations from the original petition. On November 2, 2022, Duane Duvall filed [an] Answer to Amended Petition, again citing A.C.A. 28-25-103, challenging the validity of the will.

3. On February 7, 2022 [should be 2023], Duane Duvall filed an Amended Response, again citing A.C.A. 28-25-103, and additionally A.C.A. 28-15-104, disputing the validity of the will.

6

4. As Greg Duvall points out in his brief, Duane Duvall has renewed his challenge to the will, even after an extensive hearing whereby the Will was admitted by the court over his objection, through a Motion to Set Aside Order Admitting Will filed May 6, 2024.

5. Paragraph 23 of the Will contains the following No Contest Provision: "If any beneficiary under this Will contests in any court any of the provisions of this Will, then each and all such persons shall not be entitled to any devises, legacies, bequests, or benefits under this Will or any codicil hereto, and such interest or share in my estate shall be disposed of as if that contesting beneficiary had not survived me."

6. While each clause in a Will may contain a specific provision, a Will, by its very nature, is a testator's entire provision for distribution of his/her estate in accordance with his/her wishes. Philip Duvall's lost Will, which was admitted to probate herein, is no different. This court finds that Duane Duvall's challenges to the validity and existence of the Will through his Response, Answer to Amended Petition, Amended Response, and ultimately his Motion to Set Aside Order Admitting Will, were each a challenge to the entire provision of the Will, and therefore in violation of the No Contest Provision. Duane Duvall, per the terms of the Will, shall not be entitled to any devises, legacies, bequests, or benefits, and his interest or share in the estate shall be disposed of as if he had not survived Philip Duvall.

Duane timely appealed the June 4 order.

This court reviews probate proceedings de novo on the record, but we will not reverse the decision of the circuit court unless it is clearly erroneous. *Hunter v. Est. of Springston*, 2025 Ark. App. 167, at 8, 710 S.W.3d 468, 473. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 8, 710 S.W.3d at 473. Furthermore, while we will not overturn the circuit court's factual determinations unless they are clearly erroneous, we are free during a de novo review to reach a different result required by the law. *Id.* at 8, 710

7

S.W.3d at 473. Similarly, in deciding matters or issues of law, our standard of review is de novo. *Id.* at 8, 710 S.W.3d at 473.

For his sole argument on appeal, Duane contends that the circuit court erred in finding that his challenges to the existence of the 2021 will amount to a contest of the provisions therein. Stated another way, Duane characterizes the issue as "whether merely questioning the existence of a will that fails to meet the testamentary requirements of Ark. Code Ann. § 28-25-103 is enough to invoke a no-contest clause."

The supreme court has long recognized the validity of no-contest clauses. *See Jacks v. Brossett*, 2024 Ark. App. 6, at 15, 682 S.W.3d 362, 370 (citing *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007); *Jackson v. Braden*, 290 Ark. 117, 717 S.W.2d 206 (1986); *Lytle v. Zebold*, 235 Ark. 17, 357 S.W.2d 20 (1962); *Ellsworth v. Ark. Nat'l Bank*, 194 Ark. 1032, 109 S.W.2d 1258 (1937)). We begin our review with the specific language of the *in terrorem* clauses to determine what actions trigger the no-contest clause. *Id.* at 156, 682 S.W.3d at 370. However, because such clauses work a forfeiture, they are strictly construed. *Id.* at 15–16; 682 S.W.3d at 370.

The no-contest provision at issue provides in part that if "any beneficiary under this Will contests in any court any of the provisions of this Will, then each and all such persons shall not be entitled" to any benefits under the will.

Greg sought to have the 2021 will admitted to probate after the 2009 will had previously been admitted to probate. Citing *Guess v. Going*, 62 Ark. App. 19, 24, 966 S.W.2d 930, 932–33 (1998); Arkansas Code Annotated section 28-48-105(a)(1) (Repl. 2012); and

8

*Taylor v. Woods*, 102 Ark. App. 92, 282 S.W.3d 285 (2008), Duane contends that as executor of the admitted 2009 will, he had a fiduciary duty to his father's estate to ensure that Greg prove the legitimacy of the 2021 will and to exercise good faith in all transactions affecting the estate. Duane argues that the circuit court put him in an impossible position to either disregard Philip's wishes in the 2009 will or risk being disinherited by requiring Greg to demonstrate the validity of the 2021 will of which Duane was unaware. Duane states he chose to observe his fiduciary duty to his father's estate and that it is "bad public policy" to punish an executor for doing so. He states that the circuit court's decision "paves the way for . . . fraudulent documents to be proffered as 'wills' by self-serving heirs willing to play a game of legal chicken – anyone who challenges the existence of a will that doesn't comply with statutory guidelines could well run the risk of becoming disinherited."

In response, Greg contends that matters of public policy are within the purview of the legislature. *See In re Est. of Bond*, 2019 Ark. App. 241, at 7, 576 S.W.3d 38, 42. And the legislature has allowed for a lost will, if properly proved, to be admitted to probate. *See* Ark. Code Ann. § 28-40-301 (Repl. 2012). Further, Greg argues that since a "testator may leave his property to anyone he chooses he is at liberty to exclude from his bounty those beneficiaries who unsuccessfully seek to thwart his testamentary wishes." *See Lytle*, 235 Ark. 17, at 18–19, 357 S.W.2d at 21. Greg contends that Duane was no longer the executor, and the existence of the will was not an issue when he filed the May 2024 motion to set aside the 2023 order admitting the 2021 will to probate. Greg argues that the May 2024 motion "unquestionably triggered" the no-contest clause and that Duane's public-policy arguments

9

are not applicable to this challenge because it took place after he was no longer the appointed executor and the existence of the 2021 will was no longer an issue.

In *Seymour*, 371 Ark. at 362, 266 S.W.3d at 725, the supreme court upheld the enforcement of a no-contest clause that prohibited a "contest" of the testator's will. In that case, the circuit court admitted to probate a May 6, 2002 will and appointed one of the decedent's daughters (Biehslich) as personal representative of her father's estate. The May 6 will contained a no-contest clause. One month later, another daughter (Seymour) offered a will dated May 13, 2002, which was in Seymour's handwriting—not the decedent's—and gave small devises to the other daughters with the remainder to Seymour. Biehslich moved to exclude Seymour from receiving any distribution, claiming that she contested the May 6 will, which triggered its no-contest clause. The circuit court agreed. Seymour appealed, contending that her action of filing a conflicting will did not constitute a contest of the May 6 will's validity.

Recognizing an absence of Arkansas case law on point, the supreme court discussed that other jurisdictions had addressed the proffer of a subsequent will and whether it triggers a no-contest clause, and it concluded that "such an action, if not undertaken in good faith, can constitute the kind of challenge that triggers a will's no-contest clause." *Id.* at 364, 266 S.W.3d at 726. Because there was ample evidence in the record demonstrating that Seymour was not acting in good faith when she proffered the subsequent will, the supreme court affirmed the circuit court's decision that her actions triggered the no-contest clause. *Id.* at 367, 266 S.W.3d at 728.

In *Sharp*, this court upheld the circuit court's decision that challenging the will on the basis of testamentary capacity and undue influence triggered the no-contest clause. In *Sharp*, the father's original 2007 will divided his estate evenly between two sons—one who lived close to the father (James) and one who lived in Texas (Gary). In 2010, the father executed a new will that left furniture and $100,000 to Gary and farm equipment, automobiles, all real property, and the residue of the estate to James. The will contained a no-contest clause that provided: "In the event any person should contest any provision of this will for any reason, then such person shall take nothing from my estate, instead of the property bequeathed to them hereinabove."[3] 2014 Ark. App. 645, at 3, 447 S.W.3d at 624. After the father died, James petitioned to probate the 2010 will and be appointed executor. Gary filed a will contest alleging a confidential relationship, procurement, and undue influence. James admitted the existence of a confidential relationship but denied procurement. The circuit court found that there was no procurement or undue influence and that the 2010 will was valid. Thereafter, Gary petitioned the court to find the no-contest clause unenforceable, arguing that he pursued the will contest in good faith relying on *Seymour*.

This court declined to address Gary's argument that the circuit court should have deemed that his will contest was in good faith and exempting him from the no-contest clause in his father's will, concluding that "Arkansas law does not provide for a good-faith exception for a litigant who files what unquestionably constitutes a will contest." *Id.* at 7, 447 S.W.3d

---

[3]This language is similar to the one in the present case, which also prohibits a beneficiary from contesting "any provision" of the will.

at 626. This court distinguished *Seymour* as an indirect will contest (Seymour sought to file a purportedly valid subsequent will), unlike Gary's direct contest to the 2010 will, and declined to expand the application of *Seymour*:

> Gary made a direct and unsuccessful attack on his father's 2010 will. There is no good-faith exception to a direct attack on a will that contains a no-contest clause. We decline to expand *Seymour* as argued by appellant. We therefore do not reach the merits of Gary's arguments that his will contest was taken in good faith and that the no-contest clause should not be enforced.

*Id.* at 8–9, 447 S.W.3d at 627.

With *Seymour* and *Sharp* as a backdrop, we turn to the facts of this case. Duane's initial actions in challenging the 2021 will[4] occurred while he served as executor of his father's estate and before the circuit court's entry of the 2023 order revoking the 2009 will and probating the 2021 will. These initial actions amounted to an indirect will contest, as was the case in *Seymour*, which indicates that such an action, if not undertaken in good faith, may constitute the kind of challenge that triggers a will's no-contest clause. However, we need not answer the question of whether Duane's initial actions were taken in good faith because more than a year *after* the 2021 will was found to be a valid lost will (revoking the 2009 will) and was admitted to probate in the April 2023 order—a decision that Duane did not appeal—and *after* Duane was no longer serving as executor of his father's estate, Duane again challenged the validity of the 2021 will by filing the May 2024 motion to set aside the

---

[4]The initial actions include Duane's response to Greg's original petition to probate the 2021 will, Duane's response to Greg's amended petition to probate the 2021 will, and Duane's amended response to Greg's amended petition.

12

2023 order admitting the 2021 will to probate. Therefore, Duane's May 2024 motion was a direct contest to the 2021 will that triggered its no-contest provision and to which the good-faith exceptions do not apply. *See Sharp*, 2014 Ark. App. 645, at 9, 447 S.W.3d at 627. Accordingly, we hold that the circuit court did not clearly err in finding that Duane violated the no-contest clause of the 2021 will, and we affirm.

Affirmed.

TUCKER and BROWN, JJ., agree.

*Nobles Law Firm, PLLC*, by: *Ethan C. Nobles*, for appellant.

*Baxter Law Firm, PLLC*, by: *James R. Baxter*, for appellee.