Cite as 2024 Ark. App. 6

# ARKANSAS COURT OF APPEALS
## DIVISIONS II, III, AND IV
No. CV-21-293

| | |
|---|---|
| ASHLEY JACKS, INDIVIDUALLY AND AS PARENT/LEGAL CUSTODIAN TO MINOR BENEFICIARIES, PARIS LUDWIG AND BAYLI LUDWIG, OF THE HAVIS L. JACKS REVOCABLE TRUST<br><br>APPELLANT<br><br>V.<br><br>SANDRA BROSSETT, INDIVIDUALLY, AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF HAVIS L. JACKS, AND AS TRUSTEE OF THE HAVIS L. JACKS REVOCABLE TRUST<br>APPELLEE | Opinion Delivered January 10, 2024<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. 60DR-17-919]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br><br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Ashley Jacks—individually and as parent/legal custodian of Paris Ludwig and Bayli Ludwig, the minor beneficiaries of the Havis L. Jacks Revocable Trust—brings this appeal from a Pulaski County Circuit Court order granting summary judgment in favor of Sandra Brossett, individually; as executrix (Executrix) of the Last Will and Testament of Havis L. Jacks (Will); and as trustee (Trustee) of the Havis L. Jacks Revocable Trust (Trust). The circuit court held that Ashley had violated the *in terrorem* clauses of both the Will and the Trust and, as a result, had forfeited all her beneficiary interest in both documents. The court,

however, left the subtrust created for the benefit of Ashley's children (Havis's grandchildren) intact. We affirm.

I. *Facts and Procedural History*

This is a dispute over a will and a trust executed by Havis Jacks in March 2016 and whether the actions of a certain beneficiary, Ashley Jacks, triggered the *in terrorem* clauses of those two documents.

Three months prior to his death, Havis Jacks executed a Will and a Trust. Havis was survived by his daughter, Ashley Jacks, and her two children, Paris and Bayli Ludwig. The Will and Trust made specific provisions for Ashley, her children, and Sandra Brossett. The nature of Havis and Sandra Brossett's relationship is not known, but it is clear that she and Havis were close and that Havis trusted her because he made her Executrix of his Will and Trustee of his Trust. This is in stark contrast to his treatment of Ashley, whom he explicitly prohibited from serving as a Trustee of either the main Trust or the subtrust and whom he did not designate as even the successor executrix to his estate after Sandra.[1] It is undisputed that Ashley and Sandra have what Ashley described as a long and "very tumultuous"

---

[1] In her briefing before the trial court, Sandra described Havis and Ashley's relationship as very one-sided. She alleged that Ashley saw or spoke with Havis only when she needed financial assistance. In fact, Ashley told Havis that when he died, she would take his money and buy herself a new Mercedes. Then, within days of Havis's death, she attempted to access the Trust in an attempt to liquidate it at a loss. Sandra indicated that Havis had anticipated this behavior, which is why he prohibited Ashley from serving as Trustee. The record reflects that Ashley sold the real property she inherited from Havis within nine months of receiving it, and she sold the vehicles she received within a year of his death.

relationship.

## A. The Will

In his Will, Havis appointed Sandra as Executrix of his estate, and Iberia Bank as successor executor. The Will also bequeathed all of Havis's interest in his personal automobiles and his household goods and effects to Sandra and provided that if there were items Sandra did not want, then the unwanted items were to be distributed to Ashley or her children. The residue and remainder of his property was directed to be placed in, and distributed according to, the Havis L. Jacks Revocable Trust. The Will contained the following *in terrorem* clause:

> Should any person challenge, or cause to be challenged or aids in challenging, directly or indirectly, any provision contained in this Will, my Revocable Trust and/or any power of appointment, or otherwise become an adverse party, in any suit, action or proceeding (whether legal or administrative) in connection with the administration of this Will, my Revocable Trust, any power of appointment, or distribution of assets, or otherwise become an adverse party in a suit, action or proceeding (whether legal or administrative) involving this Will, my Revocable Trust, any power of appointment, or distribution of assets, such person shall forfeit all interests, rights and powers such person has under this Will, my Revocable Trust, any power of appointment, in such assets, and in my estate pursuant to state law, my Revocable Trust, this Will, any power of appointment, assets subject to any power of appointment, and such assets and such person shall be deemed to have predeceased the date of any division, allocation or distribution herein, under my Revocable Trust, in my estate, assets subject to any power of appointment, and assets, and pursuant to state law for the benefit of such person. This Paragraph shall not be construed to limit the appearance of any person as a witness in any proceeding involving this Will, my Revocable Trust or any power of appointment, nor to limit any person's appearance in any capacity in a proceeding for the construction hereof.

## B. The Revocable Trust

The Trust instrument provided that all checking accounts owned by either Havis or the Trust were to be distributed to Sandra. The remaining property in the Trust, including

4

certain real property, was to be distributed to Ashley. The Trust instrument also created a subtrust in the event any distribution was designated for the benefit of his minor grandchildren, Paris and Bayli. It is undisputed that this subtrust was funded by two IRA accounts managed by Edward Jones.

The Trust designated Sandra as Trustee for the main Trust and designated Iberia Bank as the successor trustee in the event Sandra was unable or unwilling to serve. The Trust also designated the bank as trustee of the subtrust. Rather than naming a specific successor trustee for the subtrust, the Trust provided that, if for some reason Iberia Bank was unable or unwilling to serve as trustee, Sandra in her individual capacity had the power to appoint, in a signed writing, one or more successor trustees. In no event, however, could Ashley serve as trustee of either the main Trust or the subtrust.

The Trust also set forth a specific procedure for the removal of a trustee. It provides, in pertinent part, that any trustee other than those specifically identified by Havis—Sandra as Trustee of the main Trust and Iberia Bank as trustee of the subtrust—could be removed by written notice signed by all of the current beneficiaries of the Trust. It also provided that if any trustee designation failed, the individuals who at such time could remove such trustee would have the power to appoint and/or nominate the successor or successors by a signed written notice delivered to the current beneficiaries of the Trust.

Finally, the Trust also contained an *in terrorem* provision:

> Should any descendant of the Grantor or named beneficiary hereunder (either individually or as part of a class) challenge any provision contained herein in any court proceeding or otherwise become an adverse party in any judicial proceeding

5

involving this trust, including any challenge to a Trustee's discretion hereunder, such adverse party shall forfeit his or her entire interest hereunder and shall cause the forfeiture of any interest otherwise belonging to a descendant of the adverse party. Any forfeited interest shall be distributed to the other beneficiaries hereunder as if the adverse party and all descendants of the adverse party had predeceased the Grantor. This paragraph shall not be construed to limit the appearance by any person in a proceeding for the construction of the trust.

## C. The Dispute

Havis died on June 22, 2016, a mere three months after he executed the Will and Trust. At the time of his death, the Trust became irrevocable. As specified by the terms of the Trust, on July 26, 2016, Sandra executed a trustee's deed to Ashley Jacks for the real property owned by Havis. On August 19, 2016, Sandra, in her capacity as Executrix of Havis's estate and as Trustee of his Trust, requested that Ashley immediately return all assets owned by Havis at the time of his death, including but not limited to, all personal automobiles, the motorcycle, tools, household and personal goods, and his personal effects.

Sometime thereafter, Iberia Bank declined the opportunity to serve as trustee of the subtrust, finding the entrusted funds were not sufficiently substantial for it to manage. Sandra subsequently expressed her intent to name herself as successor trustee of the subtrust in place of Iberia Bank, and Ashley objected. This litigation then ensued.

## D. The Litigation

On February 21, 2017, Ashley, both individually and on behalf of her children, filed a petition to remove Sandra as Trustee.[2] Importantly, she sued Sandra not only as trustee of the separate subtrust established for her children but also individually; in her capacity as Executrix of Havis's Will; and as Trustee of the main Trust. In this petition, Ashley alleged that Sandra, as Trustee of the main Trust,[3] had failed to pay the 2015 real estate taxes, and Sandra, as Executrix of Havis's Will, had failed to timely open a probate of the estate. She further asserted that Bruce Aston (a longtime family friend) had agreed to act as trustee of the subtrust but that Sandra had refused to appoint him, instead opting to appoint herself. Notably, in this initial petition, Ashley did not allege any specific facts indicating that Sandra had actually mismanaged the funds; nor did she ask the court for an order construing the terms of the Trust or Sandra's power and authority under it—she asked only for Sandra's

---

[2]The dissenting judges in the opinion authored by Judge Barrett ("Barrett dissent") contend that we should consider only the allegations contained in the third amended petition because the provisions of the prior petitions were not adopted or incorporated therein. However, the dissent fails to recognize that, because the violation occurred the moment Ashley made the allegation in the first instance, whether she continued to pursue those allegations is irrelevant to our analysis. *See* Restatement (Third) of Property (Wills & Donative Transfers) § 8.5 cmt. d (2003) ("The institution of a proceeding to contest a will or other donative transfer, or to challenge a particular provision, upon any of the grounds within the scope of the no-contest clause, normally violates the clause. In the absence of specific language to the contrary, the clause should be construed to be violated regardless of whether the action is subsequently withdrawn immediately after its institution, prior to a hearing, at the trial, or at any time thereafter.")

[3]Ashley, but not her children, were beneficiaries of the main Trust.

7

removal.[4] And rather than follow the specific procedure outlined in the Trust for removal of a trustee, Ashley claimed she was authorized to remove Sandra pursuant to subdivisions (b)3 and (b)4 of Arkansas Code Annotated section 28-73-706(b) (Repl. 2012).[5] Not only did she seek removal of Sandra as Trustee of the subtrust but she also requested removal of Sandra as Trustee over the main Trust (an action not authorized by the Trust). She also sought the appointment of Bruce Aston (or another suitable trustee) as successor trustee in Sandra's

---

[4]The dissenting judges in the opinion authored by Judge Hixson ("Hixson dissent"), maintain that the *in terrorem* clauses were not violated because Ashley's claims necessarily required the court to construe the provisions of the Trust. While we agree that the *in terrorem* clauses here would have permitted Ashley to seek construction of the Trust, that's not what occurred here. In actuality, Ashley never asked the court to construe the terms of the Trust or to define Sandra's authority thereunder; rather she chose to file a petition in which she affirmatively pled and plainly stated that Sandra had, in fact, violated the terms of the Trust and should be removed. If Ashley had intended to question Sandra's authority to appoint herself as subtrustee or her duty to provide an accounting, Ashley could have filed a declaratory-judgment action asking the court to construe the provisions of the Trust and to enter an order defining Sandra's authority and obligations thereunder. Such an action would not have run afoul of the *in terrorem* provisions. But Ashley did not do so. Instead, she opted to seek the affirmative relief of removal.

[5]Arkansas Code Annotated section 28-73-706(b):

A court may remove a trustee if:
. . . .

(3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or

(4) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

place. Most importantly, she then requested the au thority to appoint all future successor trustees.

In May 2017, Sandra filed a counterclaim alleging that Ashley had become an adverse party and had questioned Sandra's intent and discretion as Trustee in violation of the *in terrorem* clauses of the Will and the Trust. Sandra claimed that by doing so, Ashley had forfeited not only her interest under the Will and Trust but also her children's interest in the subtrust. Therefore, she asked the court to order Ashley to return any items of personal property received pursuant to the Will and Trust[6] and to relinquish the proceeds from the sale of any real and personal property received under the Will and Trust.

The case continued on for over a year with Ashley amending her petition multiple times. In one of the amendments, she dropped her allegations with respect to the untimely probate of the Will and added a claim of damages for breach of fiduciary duty. After Ashley filed her second amended petition to remove Sandra as Trustee in November 2018, Sandra moved for summary judgment. As part of her motion for summary judgment, Sandra argued, in part, that Ashley had triggered the *in terrorem* provisions (1) when she filed her first pleading asking that the court grant her the authority to appoint a successor trustee in direct conflict with paragraph FIRST subsection (e) of the Trust, which gave Sandra the authority

---

[6]Sandra specifically requested the return of a fire badge that she claimed should have remained with her pursuant to the Will. Ashley refused to return it, claiming that her father gave her the fire badge prior to his death. She further argued that it was personal property with no monetary value and only sentimental significance and, therefore, was not included in the definition of "household and personal goods and effects" under the Will.

9

to appoint one or more successor trustees for the subtrust; (2) by directly contesting Sandra's discretion by asserting she had delegated her investment and management duties to an Edward Jones financial advisor; and (3) by failing to prudently invest and administer the Trust and subtrust. Moreover, Sandra claimed that the *in terrorem* clauses were triggered after Ashley had filed suit against Sandra and became an adverse party in a judicial proceeding that challenged more than one provision of the Trust. Although Sandra had asserted in her counterclaim that Ashley's actions had triggered a forfeiture of both her and her children's interest in Havis's estate, she notably abandoned that claim in her brief in support of her motion for summary judgment and requested that the grandchildren's interest in the subtrust be protected since they were under the age of majority when brought into this suit by Ashley. Sandra asserted that her only objective in denying Ashley's requests was to prevent Ashley from eviscerating the subtrust and claimed that if Ashley were allowed to appoint a "shadow trustee," it would circumvent Havis's intent to prevent her from doing so.

Almost a year later, Ashley filed another amended petition for removal and for damages for breach of fiduciary duty. In her third amended petition for removal, Ashley alleged, as she did in her original petition, that she had the right to remove Sandra pursuant to subdivisions (b)3 and (b)4 of Arkansas Code Annotated section 28-73-706(b) and added an allegation as to violation of subdivision (b)1, which involves removal of a trustee who has committed a serious breach of trust. The third amended petition also contained an assertion that she had the right to remove Sandra as Trustee pursuant to paragraph TWELFTH (d)(2) of the Trust, which provides, in part:

While the Grantor is unable to exercise the removal powers granted in subparagraph (1) above, and subject to the provisions of Paragraph FIRST, any Trustee (including any appointed or nominated Trustee), other than those individuals designated in or pursuant to Paragraph FIRST . . . may be removed from such position of any trust by written notice thereof delivered to all Trustees of such trust and signed by all of the Current Beneficiaries of such Trust. . . .

In support of these allegations, Ashley claimed that she sent written notice to Sandra to remove her as Trustee as required by subsection (d)(2) above and that removal was requested by all of the qualified beneficiaries. She also argued that Sandra had committed a serious breach of trust by withdrawing $43,000 from the subtrust over a period of eight months without an accounting or justification. Finally, Ashley argued that Sandra was unfit, unwilling, and had persistently failed to administer the Trust effectively as evidenced by her untimely filing of tax returns and distributions of K-1s to the grandchildren for two years in a row and by refusing to appoint Ashley's choice for successor trustee. Notably at this point, Ashley had dropped any allegation as to Sandra's actions as Executrix or as Trustee of the main Trust. She asked, however that Sandra be removed as Trustee of the subtrust; that Community First Trust (or other suitable trustee) be appointed in Sandra's place as trustee of the subtrust; and again, that Ashley, rather than Sandra in her individual capacity, be given the power to appoint any and all future successor trustees.

Also included in the third amended petition was a claim for damages for breach of fiduciary duty. Ashley claimed that Sandra failed to administer the Trust in good faith and in accordance with the interests of the beneficiaries; to act impartially in investing, managing, and distributing the Trust property, giving due regard to the beneficiaries' respective interest;

11

to keep adequate records of the Trust administration; and to keep Trust beneficiaries reasonably informed about the administration of the Trust and of the material facts necessary for them to protect their interests and to promptly respond to anything other than requests that are unreasonable under the circumstances. More specifically, she claimed that Sandra's "continued incompetence and breach of duty of care with the tax issue, as well as her egregious actions of withdrawing at least $43,000 from the Trust[7] and failing to account to Ashley on an annual basis," constituted a breach of her fiduciary duties taken in bad faith or with reckless indifference. She asserted that her breach-of-fiduciary-duty claims did not violate the *in terrorem* clauses because Arkansas Code Annotated section 28-73-1008 (Repl. 2012) invalidates *in terrorem* clauses to the extent they relieve a trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries.[8]

A hearing was held on the motion for summary judgment on March 9, 2021. After the hearing, the court granted summary judgment; denied and dismissed Ashley's petition

---

[7]Ashley averred that the $43,000 was utilized, improperly, for Sandra's legal fees in defense of this matter and "possibly for other personal expenses."

[8]Arkansas Code Annotated section 28-73-1008(a)(1):

(a) A term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it:

(1) relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries. . . .

for removal; and denied Ashley's motion to dismiss Sandra's counterclaim.[9] The court stated that Havis had anticipated the parties would not get along and that his intentions with regard to the Will and Trust were clear. The court then found that Ashley had challenged a specific bequest of personal property left to Sandra under the Will;[10] had challenged Sandra's discretion to designate herself as successor trustee; had challenged Sandra's decision in declining to designate persons nominated by Ashley to serve as successor trustee; had challenged the distribution of Trust funds to pay legal fees and costs incurred in defending the action, which was allowed by the Trust; and had challenged the *in terrorem* clauses in the Will and Trust. The court then found that those actions triggered the *in terrorem* provisions resulting in a forfeiture of Ashley's beneficiary interests in the Will and Trust. As a result, Ashley was ordered to refund and deliver to Sandra, as Trustee, all assets, funds, income, property, and other items she received from the Will and Trust. However, the court found that the children's interest in the subtrust had not been forfeited; thus, their interests in the Edward Jones accounts remained intact.[11] The court made no findings with respect to

---

[9]There was also a motion to dismiss, a motion for judgment on the pleadings, and a motion to enforce a settlement before the court. The circuit court denied all three, and the court's denial of those motions is not argued on appeal.

[10]This finding related to the disagreement of the parties over Havis's fire badge.

[11]The Hixson dissent labels this finding a "blatant inconsistency"; however, the court's finding simply reflects Sandra's abandonment of her forfeiture claim with respect to the children's interest in the subtrust.

Ashley's claim of damages for breach of fiduciary duty on behalf of her children.[12] The court, in a separate order, ordered Ashley to pay the attorney's fees and costs associated with the matter.[13]

## II. *Standard of Review*

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated. *Greenlee v. J.B. Hunt Transp. Servs., Inc.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet

---

[12]We note that in her notice of appeal, Ashley abandoned any pending but unresolved claims. She filed the notice of appeal on behalf of herself and as the parent/legal custodian of her children. Thus, to the extent the court failed to rule on the children's claim for damages, those have been abandoned. Moreover, we note that Ashley's arguments on appeal challenge only the court's findings with respect to the forfeiture of her individual claims pursuant to the *in terrorem* provisions; she makes no arguments with respect to her children's claims for damages for breach of fiduciary duty. Thus, we conclude she has waived those arguments on that basis as well.

In addition, we note the Hixson dissent's concern with the perceived unavailability of a remedy for the children. The dissent fails to recognize that the children can bring a cause of action for breach-of-fiduciary-duty claims without violating the *in terrorem* provisions, so long as there is proof that the trustee has acted in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries. Ark. Code Ann. § 28-73-1008 (invalidates *in terrorem* clauses to the extent they relieve a trustee of liability for breach of trust committed in bad faith or with reckless indifference). As noted above, those claims were outstanding, yet Ashley elected to abandon them.

[13]Presumably, these funds will be used to reimburse the subtrust for legal fees expended during the defense of this matter.

proof with proof and demonstrate the existence of a material issue of fact. *Greenlee, supra.* On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* As to issues of law presented, our review is de novo. *State v. Cassell*, 2013 Ark. 221, 427 S.W.3d 663.

### III. *Analysis*

Ashley argues on appeal that the circuit court erred in determining, as a matter of law, that her actions in filing the various petitions for removal violated the *in terrorem* clauses of her father's Will and Trust, resulting in a forfeiture of her beneficiary interests therein. We disagree.

Our supreme court has recognized the validity of no-contest clauses since at least 1937. *E.g., Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007); *Jackson v. Braden*, 290 Ark. 117, 717 S.W.2d 206 (1986); *Lytle v. Zebold*, 235 Ark. 17, 357 S.W.2d 20 (1962); *Ellsworth v. Ark. Nat'l Bank*, 194 Ark. 1032, 109 S.W.2d 1258 (1937). We start our review with the specific language of the *in terrorem* clauses to determine what actions trigger the no-contest clause. *See Hamm v. Hamm*, 2013 Ark. App. 501, 429 S.W.3d 384; *Peterson v. Peck*, 2013 Ark. App. 666, 430 S.W.3d 797. However, because such clauses work a forfeiture, they

are strictly construed. Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. d (2003); *Hamm*, *supra*.

We first note that the *in terrorem* provisions of Havis's Will and Trust are fairly broad. The Will provides, in part, that a person who challenges, directly or indirectly, "any provision" contained in the Will or Trust; who becomes an "adverse party" in "any suit, action or proceeding (whether legal or administrative) in connection with the administration of" the Will or Trust; or who otherwise becomes an "adverse party" in "a suit, action or proceeding (whether legal or administrative) involving" the Will or Trust "shall forfeit" his or her rights and interest under both the Will and the Trust. The *in terrorem* clause of the Trust states that any "descendant of the Grantor" or any "named beneficiary hereunder (either individually or as part of a class)" who challenges "any provision contained herein in any court proceeding" or who becomes "an adverse party in any judicial proceeding involving" the Trust, "including any challenge to a Trustee's discretion hereunder . . . shall forfeit his or her entire interest." These provisions make clear that any challenge to the provisions of Havis's Will or Trust, any challenge to the trustee's discretion under the provisions of the Trust, or any action that results in a beneficiary becoming an adverse party in any judicial proceeding involving the Will or Trust will trigger the implementation of the no-contest clause of Havis's Will and Trust and "shall" result in a forfeiture of the beneficiary's interest thereunder.

We agree with the circuit court that, at a minimum, Ashley violated the *in terrorem* clauses of the Will and Trust in four respects. We find that Ashley triggered the forfeiture

16

clauses (1) by seeking Sandra's removal as Trustee of the subtrust without adhering to the removal provisions of the Trust; (2) by attempting to divest Sandra of authority expressly granted to her by the Trust; (3) by requesting Sandra's removal as Trustee of the main Trust in violation of the Trust provisions; and (4) by demanding that Sandra, as Trustee, provide an accounting, despite Trust provisions releasing the Trustee of such obligations. Each of these will be addressed in turn.

First, Ashley triggered the *in terrorem* clauses by failing to abide by the Trust's removal provisions. The Trust in this case allows for the removal of the trustee of the subtrust by delivery of written notice, signed by all the current beneficiaries. Rather than following the specific removal provisions, Ashley chose to file a judicial action for Sandra's removal instead. Our record establishes that the original petition seeking Sandra's removal as Trustee of the subtrust was filed on February 21, 2017; yet written notice signed by all the beneficiaries was not provided until March 28, 2017.[14] By failing to abide by the terms of

---

[14]The Barrett dissent asserts that a letter dated January 30, 2017, was sent by Ashley's counsel to Sandra prior to litigation and that it placed Sandra on notice that Ashley was seeking her removal. This assertion is problematic for two reasons. First, although the letter is referenced in the record, the letter itself is not contained in the record. Because the letter is not in the record, we cannot consider it because we do not consider matters outside the record on appeal. *Hutchinson v. Armstrong*, 2022 Ark. 59, 640 S.W.3d 395; *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 120 S.W.3d 61 (2003). Second, the record indicates that the letter was sent by Ashley's counsel. There is no indication that it was signed by all the current beneficiaries as required by the provisions of the Trust. While Ashley may claim that there is no such requirement under the Trust Code, Arkansas Code Annotated section 28-73-105(b) (Repl. 2012) clearly states that the provisions of a trust prevail over the provisions of the trust code except under certain circumstances that are not applicable here.

the Trust prior to filing judicial action, Ashley became an adverse party in a judicial proceeding involving the Trust; thereby triggering the *in terrorem* clauses.

Second, Ashley triggered the *in terrorem* clauses by asking the court to divest Sandra of authority expressly granted to her under the Trust (the appointment of all future trustees of the subtrust) and to have the court confer such authority on someone else instead. The Trust document grants Sandra, in her individual capacity, the authority to appoint the successor trustees for the subtrust. There is only one scenario in which someone other than Sandra is granted the authority to designate the successor trustee for the subtrust—when a successor is not expressly designated under the provisions of the Trust or if such designation fails. In that situation, and that situation alone, the Trust allows the current beneficiaries to appoint the successor trustee for the subtrust. Arguably, Sandra's failure to step aside after receiving the proper written notice resulted in a failure of designation, thereby giving the beneficiaries the authority to appoint the immediate successor trustee for the subtrust. The Trust did not, however, give them the authority to appoint all future trustees. Yet Ashley asked the court to do just that. In paragraph 44 of her initial removal petition, Ashley requested that the court grant her, rather than Sandra, the authority to appoint all *future* successor trustees:

> 44. Finally, so that this issue does not arise in the future, [Ashley] further prays that she be allowed to appoint a successor Trustee over the separate Trust in the event [the Successor Trustee] becomes unwilling or unable to serve as Trustee.

While she dropped her request to personally be granted that authority in her subsequent petitions, Ashley still requested that Sandra be divested of the authority to

18

appoint a successor trustee of the subtrust. For example, paragraph 71 of her third amended petition stated:

> 71. Finally, so that this issue does not arise in the future, [Ashley] further prays that in the future the acting Trustee (Community First Trust, for example) or the Court be allowed to appoint a successor Trustee over the separate Trust in the event Community First Trust becomes unwilling or unable to serve as Trustee.

The circuit court found such language to be "particularly pertinent," and so do we. Havis entrusted Sandra—not Ashley—with the authority to appoint any future successor trustee of the subtrust. Nothing in the Trust empowers anyone other than Sandra to do so. Thus, by seeking to strip Sandra of this power and confer it on either herself or a third party, Ashley was inviting the court to rewrite the terms of the Trust. Such a request constitutes a challenge to a Trust provision sufficient to trigger the *in terrorem* clauses of the Will and Trust. Again, because there is no factual dispute as to her request, summary judgment was appropriate.

Third, as with her attempt to remove Sandra as Trustee of the subtrust, Ashley's request to remove Sandra as Trustee of the main Trust also triggered the *in terrorem* clauses. Ashley claimed, in her initial petition for removal, that Sandra, as Trustee of the main Trust, failed to pay the 2015 real estate taxes. It is undisputed that, on July 25, 2016—approximately one month after Havis's death—Sandra, as Trustee of the main Trust, deeded to Ashley the real property left to her by Havis. It is further undisputed that the 2015 real property taxes on that piece of property were not due until October 15, 2016—several months after the property had been deeded to Ashley—and that the property taxes were thereafter not paid on

19

time. Ashley, in her petition, states that Sandra, as Trustee, was obligated to the pay the taxes and failed to do so. She asserted that this lone failure demonstrated that Sandra, as Trustee of the main Trust, was either unqualified or had exhibited an unwillingness or persistent failure to administer the Trust effectively. Notably missing from the allegations in that initial petition are any allegations that Ashley had requested that Sandra pay the taxes or that Sandra had refused to do so prior to suit being filed. There were also no allegations of bad faith or any other indication that the failure to pay the taxes was more than a mere oversight. Thus, in filing her complaint, Ashley caused herself to be an adverse party in a judicial proceeding involving the Trust—the very thing Havis made clear he did not want.

Another violation occurred when Ashley sought court intervention, claiming Sandra had failed to provide the beneficiaries with an annual accounting. In her first amended and supplemental petition for removal of Trustee and for breach of fiduciary duty, Ashley alleged that the Trust required Sandra, as Trustee, to keep all accounts and records and to annually provide an accounting to the current beneficiaries of the Trust and that she failed to do so. However, under the provisions of the Trust, such an accounting is required only of a corporate trustee. In fact, the Trust document specifically states that a noncorporate trustee is not required to provide an accounting. By filing suit to demand that Sandra perform actions not required of her under the Trust, Ashley once again violated the *in terrorem* clauses of the Will and Trust.

Ashley also attempted to demand an accounting and remove Sandra as Trustee using the accounting and removal provisions of the Trust Code. Ark. Code Ann. § 28-73-706(b)

20

(removal); Ark. Code Ann. § 28-73-813(c)(1) (Repl. 2012) (annual accounting). However, the Trust Code provides that, except under certain circumstances not at issue here, the terms of the trust prevail over those contained in the Trust Code. Ark. Code Ann. § 28-73-105. Thus, Ashley's filing of a lawsuit based on those provisions of the Trust Code also amounted to a challenge to the Trust provisions in violation of the *in terrorem* clauses.

Citing *Jackson v. Braden*, 290 Ark. 117, 717 S.W.2d 206 (1986), Ashley claims that she did not violate the *in terrorem* clauses because she was not challenging the validity of any of the Trust's provisions, nor was she seeking to thwart the testator's wishes; instead, she brought suit only to enforce the terms of the Trust. In *Jackson*, the court held that a no-contest clause in a will is not invoked when the beneficiaries acknowledge the validity of the will but question only the actions of the executor in not complying with the Probate Code. However, the no-contest clause in *Jackson* was limited solely to attacks upon the validity of the will. Our *in terrorem* provisions are more broadly written; they prohibit a beneficiary from becoming an adverse party in a suit, action, or proceeding (whether legal or administrative) in connection with the administration of or involving the Will or Trust.

In *Peterson v. Peck*, 2013 Ark. App. 666, 430 S.W.3d 797, we distinguished *Jackson* and noted that when determining whether the beneficiary's actions have violated the provisions of a share-cancellation clause, we must look to the specific language of the share-cancellation provisions to establish what is prohibited. Because the provisions in the Will and Trust here are broader than those in *Jackson*, violations are not limited to attacks on the validity of the Will or Trust. Thus, the fact that Ashley's claims were not an attack on the

validity of the Will or Trust will not preclude a finding that her actions invoked the forfeiture provisions of the *in terrorem* clauses.

To summarize, Havis clearly intended to put Sandra in charge of his estate and to prevent Ashley from exercising any control over it. It is also clear that he wanted to prevent his beneficiaries from fighting over his remaining assets or engaging in litigation. This can be seen from his trustee and executrix designations and from the very broad and expansive language that he placed in his *in terrorem* clauses. Ashley's actions, as described above, are not in dispute and are taken directly from the pleadings she filed in this lawsuit. We find that her actions, as a matter of law, violated the *in terrorem* provisions.

Ashley maintains that summary judgment is not appropriate because there are still disputed issues of material fact remaining as to whether Sandra acted in bad faith and regarding her breach-of-fiduciary-duty claims. However, it takes only one violation of the *in terrorem* provisions to trigger the forfeiture provisions of the Will and Trust. Because we have already determined that Ashley's actions as previously described triggered the *in terrorem* clauses resulting in a forfeiture of her interest in Havis's estate, these issues need not be decided.

Because there are no disputed issues of material fact and a determination can be made as a matter of law, summary judgment was appropriate in this case.[15] In so holding, we acknowledge that the basis for our decision is slightly different than that cited by the circuit court; however, if a circuit court's granting of summary judgment was not in error, we can affirm the judgment as reaching the right result albeit for a different reason. *See Bank of the Ozarks, Inc. v. Ford Motor Co.*, 2020 Ark. App. 231, 599 S.W.3d 718. From our review of the record, we find that the circuit court appropriately granted summary judgment and found that Ashley triggered the *in terrorem* clauses. Thus, forfeiture of her rights under the Will and Trust were correct.

Affirmed.

ABRAMSON, GLADWIN, WOOD, and MURPHY, JJ., agree.

HARRISON, C.J., and VIRDEN, BARRETT, and HIXSON, JJ., dissent.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. In its rush to conclude that the conduct of the appellant triggered the *in terrorem* clause that forfeited Ashley Jacks's inheritance, the court ignored the basic baseline requirement of making fundamental and essential findings of fact. Here, the court was subsumed with the conduct of the appellant,

---

[15]The Barrett dissent maintains that the terms of the Will and Trust are ambiguous, and thus, we should reverse and remand to allow for extrinsic evidence to be presented. However, neither party argued, either below or on appeal, that any such ambiguity existed; nor was a reversal sought on that basis. To reverse on such grounds would be to depart from our well-settled rule that this court will not reverse a circuit court's decision on the basis of an argument not raised or ruled upon below. *See Deaver v. Faucon Props., Inc.*, 367 Ark. 288, 239 S.W.3d 525 (2006); *Cummings v. Boyles*, 242 Ark. 923, 415 S.W.2d 571 (1967).

when the court should have initially concentrated on the conduct of the trustee. If the first question the court answers is whether the *in terrorem* clause is violated, a probate court could never reach the determination on questions of fraud, breach of fiduciary duty, or even conversion of the beneficiaries' assets by a trustee. In this case, the probate court granted summary judgment in favor of trustee Sandra Brossett and, in doing so, divested Ashley Jacks, the daughter of decedent Havis Jacks, of her entire inheritance without making the requisite findings of fact before determining if the *in terrorem* clause was invoked. Therefore, I must dissent from the majority.

An *in terrorem* clause in a will is one that voids a gift to a devisee or legatee if the devisee or legatee disputes provisions of the will or the gift. *See* Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. a (2003); *Lytle v. Zebold*, 235 Ark. 17, 357 S.W.2d 20 (1962). Our supreme court has recognized the validity of these clauses. *Hamm v. Hamm*, 2013 Ark. App. 501, at 4, 429 S.W.3d 384, 387 (citing *Seymour v. Biehslich*, 371 Ark. 359, 266 S.W.3d 722 (2007)). The majority finds that Ashley violated the *in terrorem* clauses of Havis Jacks's will and trust in four ways: (1) by seeking Sandra's removal as trustee of the subtrust without adhering to the removal provisions of the trust; (2) by attempting to divest Sandra of authority expressly granted to her by the trust; (3) by requesting Sandra's removal as trustee of the main trust in violation of the trust provisions; and (4) by demanding that Sandra, as trustee, provide an accounting, despite trust provisions releasing the trustee of such obligations.

Our supreme court has determined that beneficiaries of a will, who acknowledged the validity of the will but questioned actions of the executor for not complying with the probate code, did not violate a "no contest" clause in the will. *Jackson v. Braden*, 290 Ark. 117, 717 S.W.2d 206 (1986). The record is clear that Ashley was not attempting to defeat or modify the will or the trust to thwart the grantor's testamentary intent or improve her personal position; rather, she was complying with the terms of the trust in seeking removal of a trustee. Ashley acknowledged the validity of the will and trust, and rather than attacking it, she was questioning the actions of Sandra—whose removal as trustee was provided for and allowed by the trust—for not complying with the probate code and for refusing to follow the grantor's wishes expressed in paragraph 12(d)(2). Thus, under the holding of *Jackson*, Ashley was perfectly within her rights to seek to replace a trustee who had breached her fiduciary duty to the subtrust as the self-appointed trustee. One must keep in mind, the thrust of Ashley's conduct was to protect the assets of the subtrust. Because her children were minors, she was required to prosecute this action as "next friend" of her minor children, the beneficiaries.[1] Therefore, the *in terrorem* clause could not be invoked to prohibit the beneficiary from adhering to the express terms of the trust allowing removal of a trustee.

This court has previously required a finding that the trustee acted in good faith before a beneficiary forfeited his or her interest due to the *in terrorem* clause. *See Peterson v. Peck,*

---

[1]While Ashley also filed suit "individually," it was Sandra's ultra vires decision to appoint herself as the trustee of the children's subtrust that was the genesis of the disagreement and the litigation.

2013 Ark. App. 666, at 9, 430 S.W.3d 797, 802. In *Peterson*, the circuit court found no evidence that the trustee acted in bad faith or with reckless indifference with regard to her trust duties and that, as a result, the share-cancellation provisions remained in effect and Peterson had forfeited her interest in the trust. In this case, no findings were made on whether Sandra acted in good faith, in bad faith, or with reckless indifference in her duties as trustee as in *Peterson* and as required under Ark. Code Ann. § 28-73-1008. Additionally, no finding was made regarding whether Ashley's petition for removal was made in bad faith or with reckless indifference. Ark. Code Ann. § 28-73-105(b)(2) (Repl. 2013) states: "The terms of a trust prevail over any provision of this chapter except . . . subject to §§ 28-76-109, 28-76-111, and 28- 76-112 of the Uniform Directed Trust Act, § 28-76-101 et seq., the *duty of a trustee to act in good faith and in accordance with the purposes of the trust*." (Emphasis added.) Further, Ark. Code Ann. § 28-73-1008(a)(1) provides that "[a] term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it: (1) *relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries*." (Emphasis added.) It is also important to consider that the trust language itself provides that "if applicable state law requires otherwise and overrides the terms of this trust, then a Trustee shall apply and honor such applicable state law that cannot be waived by the terms of the trust or is not otherwise waived."

Hence, before we know whether the *in terrorem* clause is even applicable under these circumstances, we must know if the terms of the trust prevail over the statutory provisions, which we cannot know unless we know if the trustee acted in good faith and in accordance

26

with the purposes of the trust. These are questions of fact that make summary judgment inappropriate.

The trust states that a noncorporate trustee does not have to furnish an accounting, and the court found that the *in terrorem* clause was invoked because Ashley asked for an accounting. However, as set forth in Ark. Code Ann. § 28-73-1008(a)(1) above, the court must first determine if the trustee acted in bad faith or with reckless indifference to the purposes of the trust and the interests of the beneficiaries. Unfortunately, the circuit court did not take testimony or make any findings in that regard; instead, it found there were no material issues of disputed fact, as evidenced by its grant of summary judgment in favor of Sandra.

Because the requisite findings regarding bad faith were not made in this case, I would reverse and remand. However, I also disagree with the majority that Ashley's actions seeking Sandra's removal and attempting to divest Sandra of authority to appoint successor trustees invoked the *in terrorem* clause had the requisite findings been made.

The trust directed that Ibernia Bank act as trustee of the subtrust created for the grandchildren. However, Iberia Bank refused to act as trustee. The trust directed that Sandra appoint the successor trustee for the subtrust. Notably, the trust did not direct that Sandra be the successor trustee of the subtrust, which it easily could have done. Instead of appointing a successor trustee, Sandra appointed herself. The trust terms allow for the trustee of the subtrust to be removed: paragraph Twelfth, subparagraph (d)(2) of the trust sets forth the removal powers when the grantor is not able to do so and provides that any

27

trustee "may be removed from such position of any trust by written notice thereof delivered to all Trustees of such trust and signed by all of the Current Beneficiaries of such trust." Ashley properly followed the trust procedures to have Sandra removed and replaced, first by letter dated January 30, 2017, and then again by letter from her attorney dated March 28, 2017. However, Sandra refused to step down or appoint another trustee. Because the trust specifically stated that the *in terrorem* paragraph was not to be construed to limit the appearance by any person in a proceeding for the construction of the trust, then when strictly construed, Ashley's interpretation and demand for compliance did not violate the *in terrorem* provision since, at most, it was an issue of the trust's construction, and she followed the trust's provisions for removal of a trustee.

Furthermore, because both the trust and the subtrust allow the beneficiaries to remove the trustee, yet the *in terrorem* clause prevents the trustee from being challenged by the beneficiaries, the clauses are contradictory and ambiguous. When the terms of a will or trust are unambiguous, it is the court's duty to construe the written instrument according to the plain meaning of the language employed. *Patton v. Fulmer*, 2016 Ark. App. 260, 492 S.W.3d 512. Extrinsic evidence may be received on the issue of the testator's intent, but only where the terms of the will are ambiguous. *In re Est. of Conover*, 304 Ark. 268, 801 S.W.2d 299 (1990); *Burnett v. First Com. Tr. Co.*, 327 Ark. 430, 433, 939 S.W.2d 827, 829 (1997). In this case, there was no finding of an ambiguity; therefore, no extrinsic evidence was taken. Thus, this case should be reversed and remanded to allow for extrinsic evidence

to be presented regarding the testator's intent and whether Sandra should be allowed to appoint herself as trustee of the subtrust.

The majority, while admitting that the trust provides the beneficiaries of the subtrust the power to remove the trustee and appoint the successor trustee, argue that Ashley's request to have the power in the future to appoint the successor trustee was an attack on the will and trust that invoked the *in terrorem* clause. This holding is logically flawed since paragraph twelfth, subparagraph (d)(2) specifically allows the current beneficiaries to remove a trustee who was not specifically designated in the trust agreement.[2] Sandra was not specifically designated to be the trustee of the subtrust. Therefore, she was subject to removal by the beneficiaries. The subtrust provides that if a trustee is removed and there is not a successor designated or such designations fail, then the individual(s) who at such time could remove such trustee shall have the power to appoint and/or nominate a successor by signed written notice delivered to the current beneficiaries. So, naturally, as the mother and legal next of kin to the minor beneficiaries, Ashley utilized this provision in the trust, coupled with Ark. Code Ann. § 28-73-706(b), to attempt to remove Sandra as the trustee of the

---

[2]Paragraph twelve, sub-paragraph (d)(2) of the trust sets forth the removal powers when the grantor is not able to do so and provides that other than those designated in or pursuant to paragraph first, any trustee "may be removed from such position of any trust by written notice thereof delivered to all Trustees of such trust and signed by all of the Current Beneficiaries of such trust." Subparagraph (e) goes on to provide the process for appointments and successor trustees, providing that if a trustee resigns, is removed, is unable, or unwilling to serve, then a co-trustee and/or successor designated in or pursuant to paragraph first shall succeed to the office and replace such trustee.

29

subtrust and to limit her power to appoint or nominate a successor in accordance with the terms of the subtrust.

Furthermore, regardless of what the *in terrorem* clause says, Ark. Code Ann. § 28-73-1008(a)(1) provides that "[a] term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it: (1) relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries." Sandra cannot be relieved of liability for her acts as trustee merely because there is an *in terrorem* clause. If she acts in bad faith, reckless indifference, or thwarts the testator's wishes, she is liable. If an *in terrorem* clause prevents the beneficiaries from bringing suit against a trustee before the evidence is presented, a trustee would have unfettered power to abuse his or her position, thwart the wishes of the grantor, and illegally deplete the entire trust of property, and there would be nothing anyone could do about it. Those with standing to do so would be disinherited before the trial could commence, with no consequence to the trustee for breaching fiduciary duty to the beneficiaries. Fiduciary duty cannot simply be willed away; otherwise, there is no oversight to make sure that the trustee is acting in the best interests of the beneficiaries.

The supreme court in *Jackson*, 290 Ark. at 120, 717 S.W.2d at 208, held that the beneficiaries acknowledged the validity of the will and, rather than attacking it, were questioning the actions of the executor for not complying with the probate code and therefore did not invoke the no-contest clause. Similarly, Ashley did not attack the validity of the will or trust. If fact, she followed the provisions of the will and trust in her attempts

30

to remove the self-appointed trustee; therefore, questioning the actions of the trustee cannot invoke the *in terrorem* clause unless it was done in bad faith. The circuit court did not make a finding that Ashley acted in bad faith, and therefore, summary judgment was inappropriate.

Finally, the majority focused on the actions of Ashley in the filing of her first complaint in its reasoning to support the invocation of the *in terrorem* clause. An amended complaint, unless it adopts and incorporates the original complaint, supersedes the original complaint. *McMullen v. McHughes Law Firm*, 2015 Ark. 15, at 11, 454 S.W.3d 200, 207; *City of Little Rock v. Dayong Yang*, 2017 Ark. 18, at 7, 509 S.W.3d 632, 636. Ashley Jacks did not adopt or incorporate her previous complaints in her third amended complaint and therefore it is erroneous for the majority to rely on statements made in the first and second complaints.

HARRISON, C.J., and VIRDEN and HIXSON, JJ., join.

**KENNETH S. HIXSON, Judge, dissenting**.

I. *Introduction*

Here is the problem: who will answer to Paris and Bayli when they turn twenty-five years old and discover that there is no money in their trust, which was funded with $370,000 in 2016? The majority holds that for the next twenty years or so, Paris and Bayli cannot even ask the trustee, "What are you doing with our money?" Or, "Please account for our money?" Why? Because pursuing these questions by the minor children triggers the *in terrorem* clause of the trust, and they risk total disinheritance if they do so. If you don't believe it, ask their

31

mother. So the question is, who can protect the minor grandchildren? Unfortunately, the logical conclusion of the majority opinion is that "while it is a shame, apparently, no one."

Who are these people? Well, we don't really know the relationships. The majority describes the relationship between Sandra Brossett, trustee, and Havis Jacks, settlor, as follows: "The nature of Havis and Sandra Brossett's relationship is not known, but it is clear that she and Havis were close and that Havis trusted her[.] . . ." Well, it is good that Havis had a trusted companion before he died. However, we don't know whether Sandra was Havis's new wife, fiancée, significant other, or just a new woman in his life whom he trusted. We do know the other side. Ashley Jacks is Havis's daughter, and Paris and Bayli are Havis's granddaughters. What do we know about the relationship between the new trusted woman in Havis's life and his daughter? The relationship was apparently so volatile that the majority described it as "very tumultuous," and the circuit court even made the following specific finding in its order: "That the Settlor/Testator, Havis L. Jacks, anticipated that the parties would not get along[.]" That "very tumultuous" relationship between the new woman in Havis Jacks's life and Havis Jacks's daughter set the stage for a not atypical testamentary event.

As best as we can determine from the record, Havis owned several banking accounts (his cash), some real property, and a retirement account held by Edward Jones. The value of this estate is not reflected in the record other than the $370,000 Edward Jones retirement account. As pointed out by the majority, only three months before his death, Havis executed a Last Will and Testament (the Will) and a trust. This Will begins with the following caveat:

32

"*revoking all Wills and Codicils at any time heretofore made by me*."  The record does not reflect the contents or distribution of any previous will or codicil executed by Havis or whether the new three-month-old testamentary plan was part of the dynamic in the tumultuous relationship between Sandra and his daughter.  However, it appears that no issue was raised below regarding testamentary capacity or undue influence.  Regardless, Havis's three-month-old testamentary intent was clear: Havis gave his cash to Sandra, his real property to Ashley, and the retirement accounts to his granddaughters.  Again, as pointed out by both the circuit court and the majority, Havis obviously was aware of the tumultuous relationship between Sandra and his daughter and anticipated that any intermingling of the two women in his testamentary plan would prove unworkable and disastrous.  To that end, Havis went to great lengths to separate, or wall off, his testamentary estate assets from the two women in his life.  For example, in the Trust, Havis appointed Sandra as the trustee of the main trust and went so far as to specifically exclude his daughter, Ashley, from serving as successor trustee.  Other than executing trustee deeds to Ashley for her real property inheritance, Havis's testamentary plan would not require any other cooperation or even communication between Sandra and Ashley.  Another example of Havis's plan to keep the two women separate and apart and eliminate the need for cooperation and communication between them was that Havis did not name Sandra as the trustee for the grandchildren's subtrust.  Rather, Havis took the atypical step in naming Iberia Bank as a commercial trustee for a fee, which consisted of only two Edward Jones managed accounts.  Havis's well-defined, partitioned testamentary plan should have worked.  Sandra would be in control of her inherited assets (the cash); Ashley

33

would be in control of her inherited assets (the real property); and Iberia Bank would be in control of the grandchildren's assets (the Edward Jones accounts.) There should not have been any reason for a conflict or even communication between Sandra, the new trusted woman in Havis' life, and Ashley, Havis's daughter. Those two worlds should not have to collide.

It is often uttered, "Man plans, and God laughs." A case in point. Here, Iberia Bank threw a monkey wrench into Havis's best-laid testamentary plans. Apparently, Iberia Bank decided that $370,000 was not enough money for it to serve as trustee, and Iberia Bank declined the appointment. Who, then, was to serve as the trustee for the grandchildren's $370,000 subtrust? To answer that question, one must construe various provisions in the trust. Regarding successor trustees, the main trust provides that if Sandra is unable or unwilling to serve as trustee, then Iberia Bank or its successor would serve as successor trustee. However, regarding the grandchildren's subtrust, in the event Iberia Bank was unwilling or unable to serve as trustee, then the main trust gave the current trustee, then Sandra, "the power to appoint, in a signed writing, one or more successor Trustee(s)" of the subtrust. This is consistent with Havis's testamentary intent of keeping Sandra and Ashley separate and apart and their worlds without danger of colliding. Sandra, as trustee of the main trust, should appoint a new trustee for the children's subtrust. As a practical matter, who else could do it but the trustee of the main trust? While it could go without saying, the trust did not expressly give Sandra *the right to serve* as trustee; rather, it only gave Sandra *the power to appoint* the trustee—an unfortunate ambiguity as it turns out. As one can sadly

anticipate, instead of appointing another third party as the trustee of the subtrust consistent with Havis's intent, Sandra appointed herself as the trustee of the grandchildren's inheritance. This self-appointment shattered the well-planned, fortified separating walls of Havis's estate plan. Now, Sandra controlled the inheritance given to Ashley's children, which naturally results in communication and cooperation between Sandra and Ashley—the very tumultuous relationship that Havis fervently attempted to avoid. The worlds were now bound to collide. But the problem became worse. Not only does Sandra now control the distributions of the grandchildren's subtrust, but if Ashley dares to question, complain, or even request an accounting on behalf of her children, the *in terrorem* clause in the main trust is triggered, and Sandra can force Ashley to lose her inheritance. One might question, "Well, that can't really happen, can it?" The answer is yes, and it did. And the majority opines that is proper. I do not.

## II. *Discussion*

Judge Barrett's dissent includes an excellent dissertation discussing the standards of review and the law regarding trusts and *in terrorem* provisions. I will not repeat Judge Barrett's analysis except to say that that *in terrorem* provisions are strictly construed because they work as a forfeiture. *See* Restatement (Third) of Property: Wills and Donative Transfers § 8.5 *cmt.* d (2003); *Hamm v. Hamm*, 2013 Ark. App. 501, 429 S.W.3d 384. The majority correctly quotes the *in terrorem* provisions in both the Will and the trust; therefore, they do not need to be repeated herein. There is no question that when Iberia Bank declined the appointment as trustee of the grandchildren's subtrust and Sandra appointed herself as the trustee, the

appointment made Ashley unhappy, and she attempted to persuade Sandra to name a different trustee. Communication ensued and Sandra refused. This led to the present litigation in which Ashley attempted to remove Sandra as the trustee and have a successor trustee appointed.

Regardless of the subsequent arguments and events, the underlying objective in the litigation was that Ashley Jacks, the daughter of Havis Jacks, was attempting to protect her daughters' interests in their subtrust from Sandra. Perhaps, this was warranted because by the time the litigation was completed, Sandra had spent over $43,000 of the *grandchildren's money*. (While the trust language provided that the trustee could invade the corpus of the trusts for necessary expenditures, one might ask, "Why didn't Sandra invade her own trust assets (her cash) instead of the grandchildren's assets (the Edward Jones retirement accounts)?".) Regardless, as a result of their history, Ashley simply did not trust Sandra. It is imperative to remember that Havis went to great lengths in his testamentary plan to separate and wall off Sandra from Ashley due to their tumultuous relationship. Sandra intentionally breached this fortified wall by appointing herself as the trustee of the subtrust. To avoid this breach and anticipated repercussions, Ashley asked Sandra to appoint someone else as trustee. Practically anyone else. Sandra refused. Ashley then filed this petition—individually and as their mother and as their "next friend"—to protect her children. Ashley made three pertinent arguments. First, she argued that although the trust language gave Sandra the *power to appoint* a successor trustee of the subtrust, it did not give Sandra the power to appoint herself as the trustee. This would require the circuit court to construe

36

paragraph first of the trust and determine whether Sandra had the authority to appoint herself as the trustee of the subtrust. Second, Ashley argued that Sandra should account for any funds she spent out of the children's subtrust. This would require the circuit court to construe paragraph twelfth of the trust and determine whether the minor children had the right to ask the trustee for an accounting or review. And third, she argued that regardless of whether Sandra had the power to appoint herself as trustee of the subtrust, the minor children could remove the trustee. This again would require the court to construe paragraph twelfth of the trust.

Why is it important for Ashley Jacks to ask the court to construe paragraphs first and twelfth among other interrelated sections of the trust? It is important because the *in terrorem* clauses in both Havis's Will and trust have a built-in exception to the application and enforcement of the *in terrorem* clause. Havis anticipated that the need might arise where a court or other appropriate forum may be required to construe the language of the trust or the Will. Hence, the *in terrorem* clause in Havis's will contains the following language:

> . . . This [*in terrorem*] Paragraph shall not be construed to limit the appearance of any person as a witness in any proceeding involving this Will, my Revocable Trust or any power of appointment, nor to limit any person's appearance in any capacity in a proceeding for the construction hereof.

Similarly, the *in terrorem* clause in Havis's trust contains the following language:

> . . . This [*in terrorem*] paragraph shall not be construed to limit the appearance by any person in a proceeding for the construction of the trust.

Let us review the essence of Ashley's complaints. First, she complains that Sandra did not have the authority under the main trust to appoint herself as the trustee of the

subtrust. This necessarily requires the circuit court to review paragraph first of the trust, which provides the following in pertinent part:

> (e) Notwithstanding the above, with regard to any separate trust created for the benefits of a grandchild pursuant to Paragraph FOURTH(c), IBERIA BANK, . . . shall serve as the sole Trustee of any such trust; provided, at any time IBERIA BANK . . . is unable or unwilling to serve in such capacity, then SANDRA DENISE BROSSETT shall have the power to appoint, in a signed writing, one or more successor Trustee(s).

Ashley's argument is simple: paragraph first of the trust did not grant Sandra the power *to serve* as successor trustee; rather, it gave Sandra the power only *to appoint* a trustee. Paragraph first is silent on whether Sandra can appoint herself to serve as a successor trustee of the subtrust. Hence, the court was required to construe paragraph first to make this determination. By the very terms of the *in terrorem* provision, a proceeding for the construction of the trust is exempted from the *in terrorem* clause, as it should be.

The same is true for Ashley's second point, in which Ashley asks Sandra to account for any funds she spent out of the children's subtrust. The circuit court must review and construe paragraph twelfth, which provides the following in pertinent part:

> (g) <u>Accounting</u> . . . A Trustee shall not be required to provide any accounting or reporting nor shall a Trustee be under the duty to keep a beneficiary informed except as specifically provided in this Agreement. . . . Notwithstanding any provision in this subparagraph to the contrary, if applicable state law requires otherwise and overrides the terms of this trust, then a Trustee shall apply and honor such applicable state law that cannot be waived by the terms of a trust or is not otherwise waived.

Whether a beneficiary may ask for an accounting requires the circuit court to construe paragraph twelfth of the trust and applicable state law. Is the term "accounting" as used in paragraph twelfth an "annual accounting" as is typically contemplated in estate plans and

38

the trustee is required to provide? Or does a beneficiary literally have no right to ask the trustee, "Where is my money and what have you done with it?" If that is true, then does that "no accounting" language violate Arkansas law? Judge Barrett's dissent explains the application of Arkansas trust law; however, does such a blanket prohibition of these minor children violate Arkansas Code Annotated section 28-73-1008(a)(1) (Repl. 2012)? Section 28-73-1008(a)(1) provides that "[a] term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it: (1) relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries[.]" That begs the question, how can little Paris and Bayli know if Sandra is acting in bad faith or with reckless indifference if they can't even ask the question, "What are you doing with my money?" Regardless of the answer, the analysis requires the circuit court to construe the language in paragraph twelfth vis-à-vis the state law in Arkansas Code Annotated section 28-73-1008(a)(1). Such an analysis by the circuit court is a proceeding for the construction of the trust and is, therefore, exempted from the *in terrorem* clause, as it should be.

Ashley's third point is, regardless of whether Sandra had the power to appoint herself as trustee of the subtrust, her minor children had the right to remove the trustee under paragraph twelfth of the trust agreement. This would naturally require the court to construe paragraph twelfth of the trust. The majority holds that Ashley did not follow the correct procedure to remove the trustee; therefore, the *in terrorem* clause was triggered, and Ashley must forfeit her inheritance. The majority's holding on this point is self-evident. The court

39

must construe the trust language in paragraph twelfth to determine whether Ashley followed the procedure. Such a construction analysis by its very definition exempts the application of the *in terrorem* clause. Paragraph twelfth subsection (d) provides in pertinent part: ". . . any Trustee . . . may be removed from such position of any trust by written notice thereof delivered to all Trustees and signed by all of the Current Beneficiaries of such trust[.] . . ." There are other procedural safeguards. However, the bottom line for the purpose of this dissent is that the circuit court must construe paragraph twelfth subsection (d) and other provisions to determine whether Ashley followed the procedure. Such a review and construction of the removal language is a proceeding for the construction of the trust and is, therefore, exempted from the *in terrorem* clause, as it should be.

In addition, Judge Barrett explains in her dissent that the trust agreement is ambiguous and that the circuit court's task is to determine and then enforce Havis's testamentary intent. In addition to Judge Barrett's explanation, one should ask my original question: Who protects the minor grandchildren from the trustee's pilfering of the trust funds? According to the majority, the mere asking for an accounting is forbidden and invokes the *in terrorem* clause. The attempt to remove the trustee if not done according to Hoyle is forbidden and invokes the *in terrorem* clause. In fact, one should ask whether the minor beneficiaries can even attempt to remove a trustee via the correct procedure without invoking the *in terrorem* clause. The *in terrorem* clause in the trust provides in pertinent part: "Should any descendant of the Grantor *or named beneficiary* hereunder (either individually or as part of a class) *challenge any provision* contained herein in any court proceeding or otherwise

become an adverse party in any judicial proceeding involving this trust, including any challenge to a Trustee's discretion hereunder, *such adverse party shall forfeit his or her entire interest* hereunder. . . ." (Emphasis added.) So, on the one hand, the trust allows the minor children to remove a trustee, but on the other hand, that conduct or action certainly would be a "challenge to a provision" of the trust, which would cause the minor children to forfeit their inheritance. Is that a right at all? Or just a quivering illusion? Yet still another reason to void the application of the *in terrorem* clause in this situation.

In conclusion, we have the ultimate testamentary irony. Havis Jacks went to great lengths to create a testamentary plan to separate and wall off his new trusted woman friend from his daughter. Havis did his best to keep those two worlds from colliding. Because of Iberia Bank's declination to serve as trustee of the grandchildren's subtrust, Sandra appointed herself as successor trustee, which led to her having the power to force Ashley to forfeit her inheritance from her father. Go figure.

I would be remiss if I did not point out the blatant inconsistency in the circuit court's decision and the majority opinion. Ashley filed this lawsuit both individually and as next friend of Paris and Bayli. The circuit court found that the exact same conduct of Ashley, individually, triggered the *in terrorem* clause that caused Ashley to forfeit her inheritance. However, the very same conduct of Ashley, as next friend of Paris and Bayli, did not trigger the *in terrorem* clause against the grandchildren. Clearly, Ashley was required to file the claim as "next friend" of her minor children. Why then, however distasteful, were the minor children not forced to forfeit their inheritance? Sounds selective?

I would reverse the circuit court's order and hold that the *in terrorem* clause is not applicable in these circumstances. Also, I join Judge Barrett's dissent.

HARRISON, C.J., and VIRDEN and BARRETT, JJ., join.

*James, House, Swann & Downing, P.A.*, by: *Kayla M. Applegate*, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellee.